UNITED STATES of America ex rel. William PETERSEN, Relator-Appellant,

v.

J. Edwin LA VALLEE, Warden, Clinton Prison, Dannemora, New York, Respondent-Appellee.

No. 231, Docket 25557.

United States Court of Appeals Second Circuit.

Argued April 11, 1960.

Decided June 1, 1960.

Edward Q. Carr, The Legal Aid Society, New York City, for relator-appellant; Jules B. Gerard, New York City, of counsel.

Edward S. Silver, Dist. Atty., Kings County, Brooklyn, N. Y., and Louis Lefkowitz, Atty. Gen., State of New York, for respondent-appellee; William I. Siegel, Asst. Dist. Atty., Brooklyn, N. Y., of counsel.

Before SWAN, CLARK and FRIENDLY, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal from a decision of Judge Brennan denying without a hearing the relator's petition for a writ of habeas corpus. Judge Brennan granted the certificate of probable cause required by 28 U.S.C.A. § 2253, and this court assigned counsel. Although we have not been persuaded that the decision below was erroneous, the briefs and argument on behalf of appellant have been helpfully and ably presented and the court desires to express commendation and appreciation for this gratuitous public service of assigned counsel.

Appellant is presently serving a sentence of life imprisonment imposed in 1943 by a county court of the State of New York upon his conviction of first degree murder. The judgment of conviction was affirmed by the Appellate Division, People of State of New York v. Petersen, 267 App.Div. 882, 47 N.Y.S.2d 316. Leave to appeal to the Court of Appeals was denied in an unreported decision, and the Supreme Court of the United States denied a writ of certiorari, 324 U.S. 876, 65 S.Ct. 1016, 89 L.Ed. 1428 and a motion for rehearing, 324 U.S. 891, 65 S.Ct. 1023, 89 L.Ed. 1438. The relator had exhausted state remedies, as Judge Brennan found.

A complete record of the state court trial was before the district judge. Since petitioner's conviction rested upon confessions made by him between his arrest on Monday and his arraignment on the following Saturday, the ultimate issue is whether the confessions are a constitutionally permissible foundation for the finding of guilt. As stated in Stein v. People of State of New York, 346 U.S. 156, 179–182, 73 S.Ct. 1077, 1090, 97 L.Ed. 1522:

"Inquiries on which this Court must be satisfied are: (1) Under

what circumstances were the confessions obtained? (2) Has the use of the confessions been repugnant to 'that fundamental fairness essential to the very concept of justice?' * * * It is only miscarriages of such gravity and magnitude that they cannot be expected to happen in an enlightened system of justice, or be tolerated by it if they do, that cause us to intervene to review, in the name of the Federal Constitution, the weight of conflicting evidence to support a decision by a state court. * * * When the issue has been fairly tried and reviewed, and there is no indication that constitutional standards of judgment have been disregarded, we will accord to the state's own decision great and, in the absence of impeachment by conceded facts, decisive respect." [1]

During the period after arrest and before arraignment, Petersen was held incommunicado and was interrogated intermittently by police officers. He made four confessions. In the first three he admitted his complicity as a "lookout" during the burglary which resulted in the murder and named one Lonardelli as perpetrator of the crimes. In the fourth he admitted committing the crime himself. On this appeal he contends that we are required to determine (1) whether his confessions were coerced as a matter of law; and (2) whether the jury was properly instructed on the voluntariness of the confessions.

The crime of which appellant was convicted was the murder of Mrs. Catherine Watson on January 2, 1941, in a Brooklyn apartment house. She was brutally beaten about the head, and jewelry and other property was stolen from her apartment. Sixteen months later, on May 11, 1942, about 9:30 in the morning, the appellant was arrested by detective Rikeman while attempting to commit burglary. He was taken to the 68th Precinct in Brooklyn. Sometime during the first twelve hours of questioning he admitted orally to Rikeman his complicity in the murder of Mrs. Watson. Rikeman was in charge of investigating this unsolved murder. How petitioner came to talk about it does not appear. He told Rikeman that he acted only as a lookout for Lonardelli who had entered Mrs. Watson's apartment to commit burglary, and that Lonardelli perpetrated the murder. He also said that a prostitute who frequented at night a barroom in Manhattan might be able to lead the detectives to Lonardelli. On three successive nights detectives took him to the barroom to look for the prostitute. On Monday and Tuesday they remained until about 4 a. m. and then returned Petersen to a hotel room in Coney Island. On Wednesday night they brought him back to the Precinct about 1 a. m. Two other confessions substantially similar to his first were made by him on Tuesday and Wednesday respectively. Each of these statements was recorded by a stenographer. Finally, about 1:30 a. m., on Thursday, May 14, when confronted with the fact that his sister had told the detectives that he had never met Lonardelli until a year after the murder, appellant admitted that his three prior confessions were false and confessed to having committed the murder himself. Shortly thereafter he was taken to the apartment of the deceased and made additional oral admissions. He was then returned to the 68th Precinct where a stenographer transcribed his fourth and final confession between 4:45 and 7 a. m. There were present in addition to Petersen, Assistant District Attorney Heffernan, two police captains and four detectives. Subsequently he was taken to several locations mentioned in his fourth confession and identified places and persons. He was not arraigned on the mur-

1. To the same effect are Thomas v. State of Arizona, 356 U.S. 390, 402, 78 S.Ct. 885, 2 L.Ed.2d 863; Watts v. State of Indiana, 338 U.S. 49, 51–52, 69 S.Ct. 1347, 1348, 93 L.Ed. 1801. In the latter case the opinion said: "There has been complete agreement that any conflict in testimony as to what led to a contested confession is not this Court's concern."

der charge until the morning of May 16, 120 hours after his arrest.

Appellant contends that Judge Brennan erred in not holding the confessions coerced as a matter of law. At the county court trial Petersen asserted claims of physical mistreatment. His testimony was denied by the officials involved. Since there is no uncontradicted evidence to sustain the claim of coercion by physical mistreatment, it must be considered as adversely resolved by the trial jury. Appellant also claims that he was allowed to obtain little food or sleep during his detention prior to arraignment. These claims were rebutted by testimony that food was available, if requested by petitioner, and that sleeping facilities were furnished him. Again, there appears sufficient conflict in the evidence to require acceptance of Judge Brennan's conclusion that "petitioner's contention as to the lack of food or sleep during the period he was held prior to his arraignment appears to lack substance in the evidence." Cf. United States ex rel. Alvarez v. Murphy, 2 Cir., 277 F.2d 304.

Appellant's brief states that "coercion is urged not because of the delay in arraignment but because of what that delay made possible." It is vigorously contended that as soon as he admitted complicity in the burglary of Mrs. Watson's apartment, he was no longer a "suspect" but was a first degree principal to the crime of felony-murder, and should promptly have been charged and arraigned as such. Since this course was not adopted, it is asserted that the state officials "were not interested in solving a crime but in building a case." The record does not substantiate such assertion. This is not a case where a defendant has long remained silent or denied any connection with the crime and is finally broken down. Petersen confessed his connection with the crime within twelve hours after his arrest, and there is no serious contention that this first confession was involuntary. The police did not believe his story, and much of the delay preceding his truthful confession resulted from efforts to locate Lonardelli through the barroom

prostitute named by appellant. His truthful confession followed promptly upon his being confronted with the fact that the police knew his first story was false. These circumstances give a wholly rational basis for the jury's concluding that the last confession was voluntary as a matter of fact.

Consequently, the question for decision is whether, although the jury was rational in finding the confession voluntary as a matter of fact, decisions of the Supreme Court require us to hold it involuntary as a matter of law. Since, under the rule of McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, mere delay between arrest and arraignment is not a ground for overturning a state conviction based upon a confession, the issue presented appears to be whether the intermittent interrogation of appellant for approximately 69 hours between his arrest and his final confession amounts to psychological coercion as a matter of law. A factor in appellant's favor is his age, 18 at the time of his arrest, while his previous record of juvenile delinquency, his admission of having looked up the penalty for burglary before breaking into Mrs. Watson's apartment, and his false confessions after arrest are adverse factors. These false confessions and the related surveillance of the Manhattan barroom also militates against the asserted claim of coercion. Judge Brennan did not have the opportunity, as did the trial jury, to view the petitioner while testifying and to evaluate intangibles, such as appearance, presence of mind, and self-assurance, which properly carry great weight in such an inquiry.

Appellant has cited no case where delay in arraignment by state officials has alone been held to constitute such coercion as to overturn a conviction. Tending toward reversal are Malinski v. People of State of New York, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029, Watts v. State of Indiana, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801, and Turner v. Com. of Pennsylvania, 338 U.S. 62, 69 S.Ct. 1352, 93 L.Ed. 1810. However, these cases can be distin-

guished. Malinski relied heavily on the defendant's having been kept naked for a substantial period and on the prosecutor's own admission that he was trying to "break" him. In Watts v. State of Indiana the defendant was kept for the first two days in solitary confinement in a cell called "the hole"; there was more convincing evidence of lack of sleep and food and no such initial partial (and false) confession as here. In Turner v. Com. of Pennsylvania the confession was not obtained until more than four days of continuous questioning and then only on the basis of a false statement that other suspects had opened up on the prisoner; also the judge refused to charge that the prolonged interrogation should be considered in determining the voluntariness of the confession.

Appellee relies upon Gallegos v. State of Nebraska, 342 U.S. 55, 72 S.Ct. 141, 96 L.Ed. 86, Lisenba v. People of State of California, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166 and United States ex rel. Corbo v. La Vallee, 2 Cir., 270 F.2d 513, 518, certiorari denied 361 U.S. 950, 80 S.Ct. 403, 4 L.Ed.2d 382. These cases furnish some, though not controlling, support for appellee's contention. The question is well stated in Justice Frankfurter's dissent in Stein v. People of State of New York, 346 U.S. 156, 200, 73 S.Ct. 1077, 1100, 97 L.Ed. 1522: " * * * whether, under the circumstances of a particular case, a confession represents not the candor of a guilty conscience, the need of an accused to unburden himself, but the means of release from the tightening of the psychological police screws." In the present case the principal motivation for the final confession appears to have been the demonstrated falsity of Petersen's earlier confessions. Once he admitted complicity in the crime, as he did within 12 hours of arrest, the die was cast. We cannot find that Judge Brennan erred in failing to hold that the confessions were coerced as a matter of law.

 Appellant's second contention is a claim of denial of due process because of the allegedly erroneous charge to the trial jury on the question of voluntariness of the confessions. This contention requires but brief discussion. A reading of the complete charge reveals no infirmities in it under the principles enunciated in Lyons v. State of Oklahoma, 322 U.S. 596, 601, 64 S.Ct. 1208, 1212, 88 L.Ed. 1481:

"The question of how specific an instruction in a state court must be upon the involuntary character of a confession is, as a matter of procedure or practice, solely for the courts of the state. When the state-approved instruction fairly raises the question of whether or not the challenged confession was voluntary, as this instruction did, the requirements of due process, under the Fourteenth Amendment, are satisfied and this Court will not require a modification of local practice to meet views that it might have as to the advantages of concreteness."

Whether the confessions were voluntary was put to the jury in a very arresting and picturesque figure of speech. The jury was informed that the contested confessions were "the very cornerstone of this case," and were told: "That cornerstone * * * must stand as strong as the Rock of Gibraltar, otherwise this case falls." The trial judge then referred to the New York statute with respect to confessions and further instructed the jury: "While the statute refers only to threats which produce fear, thereby rendering the confession involuntary, other forms of conduct sufficient to place a defendant in fear likewise make a confession involuntary and hence worthless." We see no basis for the claim that the charge would lead the jury to believe the confessions were voluntary unless achieved through physical brutality. The jury was also correctly instructed as to the effect of unreasonable delay in arraignment. The defendant was represented by experienced counsel who took no exception to the charge and did not request any further instruction which was refused. The propriety of the charge was before the Appellate Division which affirmed without opinion. While affirm-

ance does not preclude this court from considering whether the charge exhibits fundamental error in its statement of the law, we do not find that it did so.

Judgment affirmed.