292 F.2d 348
 UNITED STATES of America ex rel. Thomas G. DANIEL, Relator-Appellant,
v.
Walter H. WILKINS, Warden, Attica State Prison, and the
People of the State ofNew York, Respondents-Appellees.
 No. 306, Docket 26602.
 United States Court of Appeals Second Circuit.
 Argued May 1, 1961.
Decided July 3, 1961.
 
 Victor M. Earle, III, New York City (Anthony F. Marra, New York City, on the brief), for relator-appellant.
 Norman Friedman, Asst. Atty. Gen. of the State of New York, New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, and Irving Galt, Asst. Sol. Gen., New York City, on the brief), for respondents-appellees.
 Before LUMBARD, Chief Judge, CLARK, Circuit Judge, and STEEL, District Judge.*
 CLARK, Circuit Judge.
 
 
 1
 Thomas G. Daniel appeals from a judgment of the District Court for the Western District of New York dated October 18, 1960, denying his application for a writ of habeas corpus. For procuring or performing a fatal abortion, Daniel was convicted of manslaughter in the first degree, N.Y.Penal Law 1050, following a trial by jury in the Court of General Sessions in New York County. He exhausted his state remedies,[1] and is presently in Attica State Prison under a sentence of not less than eight years and six months, and not more than twenty years. The district court denied Daniel's original application for habeas corpus by order dated January 22, 1960; and this court, on June 10, 1960, remanded the case with a direction that the court 'hold a hearing and examine the state court record to determine the federal question presented.' Upon remand, the district court found that the record, the district court trial was 'adequate for a determination by this court of the federal questions raised by the petitioner,' and determined that there was no need for a further hearing. The court then found that various admissions obtained from Daniel 'were involuntary and in violation of due process of law,' but that ample other evidence existed to support the conviction as a valid judgment. On this basis the court ordered the writ dismissed.
 
 
 2
 If the admissions in question were properly found to have been coerced, the judgment below must be reversed, and the writ issued. The Supreme Court 'has uniformly held that even though there may have been sufficient evidence, apart from the coerced confession, to support a judgment of conviction, the admission in evidence, over objection, of the coerced confession vitiates the judgment because it violates the Due Process Clause of the Fourteenth Amendment.' Payne v. State of Arkansas, 356 U.S. 560, 568, 78 S.Ct. 844, 850, 2 L.Ed.2d 975, followed, Blackburn v. State of Alabama, 361 U.S. 199, 206, 80 S.Ct. 274, 4 L.Ed. 242; Spano v. People of State of New York,360 U.S. 315, 324, 79 S.Ct. 1202, 3 L.Ed.2d 1265. Accord: Stein v. People of State of New York, 346 U.S. 156, 192, 73 S.Ct. 1077, 97 L.Ed. 1522;[2] and see also Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760.
 
 
 3
 The basic facts in this case are not in much dispute. Daniel was arrested at his apartment at about midnight on January 10, 1956, and was taken to the police station for questioning. At 6:00 a.m. on January 11, 1956, after approximately five hours of interrogation, he told the police that the decedent, Miss Smith, had committed suicide in his apartment, and that he had thrown her body into the Hudson River at 96th Street and Riverside Drive. A detective then took him to that location while the Harbor Squad searched unsuccessfully for the body. Upon his return to the police station, and between 8:00 a.m. and noon, he progressively admitted that he had been intimate with the deceased, that she had become pregnant, that they agreed upon an abortion, that he procured one Leobaldo Pijuan to perform the abortion, that Miss Smith died in the course of the abortion, and that he and Pijuan thereupon became panicky and threw her body into the river. On the basis of this statement, the police picked up Pijuan and arraigned Daniel as a material witness. Subsequently, about 3:30 or 4:00 p.m. on January 11, 1956, Daniel was questioned further about the details of the abortion. His formal statement was finally recorded between 11:00 p.m. January 11 and 1:00 a.m., January 12, approximately twenty-four hours after he was originally taken into custody. The admissions which followed the noon confession basically recapitulated the earlier story, except that he more clearly spelled out his participation in the abortion, and stated that the body was chopped into pieces and disposed of, rather than thrown into the river.
 
 
 4
 The above account is virtually all that the record contains to support the finding of coercion. We think that under current decisions of the Supreme Court this is inadequate to show violation of federal due process. The duration of the questioning leading up to the noon confession was not such as to be inherently coercive. Defendant was questioned for five hours before giving his false suicide story. This obviously made police investigation necessary. Not untial this was had and an unsuccessful search made for the body was the questioning resumed. Then between 8:00 a.m. and noon, Daniel completely incriminated himself. This is a very different case from the 36 hours of continuous questioning under the glare of lights in a single room, which was held to be 'inherently coercive' in Ashcraft v. State of Tennessee, 322 U.S. 143, 154 64 S.Ct. 921, 88 L.Ed. 1192.
 
 
 5
 Furthermore, this case did not involve the trickert, humilation, or extreme youth which contributed to findings of coercion in other cases of prolonged questioning. Spano v. People of State of New York Supra, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265; Malinski v. People of State of New York 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029; Haley v. State of Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224. Daniel was offered food, coffee, and cigarettes, and was subjected to no mistreatment, aside from the fact that he was apprehended at midnight after little, if any, opportunity for sleep. He made no assertion that the noon confession was caused by fatigue or other psychological pressure. He stated that he was suffering from fatigue at the time he have the 11:00 p.m. transcribed statement, but his claim was that that statement was induced by 'physical violence and fear instilled and promises,' rather than fatigue. His testimony that he was struck and threatened was disbelieved by the jury in favor of contrary testimony by the state's witnesses, and the court below found that no threats had been made. As a result, the finding that Daniel's admissions were coerced rests solely on the duration of detention and interrogation. This was not such as to constitute coercion as a matter of law. See United States ex rel. Petersen v. La Vallee, 2 Cir., 279 F.2d 396, certiorari denied 364 U.S. 922, 81 S.Ct. 289, 5 L.Ed.2d 262. The subsequent admissions were basically amplifications of the original, voluntary confession. This is not a case where an accused steadfastly holds out over a period of time, only to relent in the end; and the afternoon and evening statements appear to have resulted from the fact that Daniel had already irrevocably committed himself, rather than from any coercion. Cf. United States ex rel. Petersen v. La Vallee, supra.
 
 
 6
 We conclude that Daniel's successive admissions were voluntarily given, and we affirm the judgment below on this ground. The charge to the jury adequately defined the claims of coercion made by Daniel, and there was no need for it to go further. We express our deep thanks to the assigned counsel for the appellant for his exceptionally able presentation of this appeal.
 
 
 7
 Judgment affirmed.
 
 
 
 *
 United States District Judge for the District of Delaware, sitting by designation
 
 
 [1]
 See People v. Daniel, 5 A.D.2d 809, 170 N.Y.S.2d 979, affirmed 6 N.Y.2d 821, 188 N.Y.S.2d 211, 159 N.E.2d 697; 6 N.Y.2d 985, 191 N.Y.S.2d 956, 161 N.E.2d 740, certiorari denied Daniel v. New York, 361 U.S. 889, 80 S.Ct. 163, 4 L.Ed.2d 124
 
 
 [2]
 Certain statements to the contrary in United States ex rel. Wade v. Jackson, 2 Cir., 256 F.2d 7, 16-17, certiorari denied 357 U.S. 908, 78 S.Ct. 1152, 2 L.Ed.2d 1158, can no longer be accepted as stating present law