UNITED STATES of America ex rel. Adolph KULIKAUSKAS, Relator-Appellant,

v.

Robert E. MURPHY, Warden of the State Prison at Auburn, New York, Respondent-Appellee.

No. 408, Docket 25820.

United States Court of Appeals Second Circuit.

Argued June 8, 1961.

Decided Aug. 17, 1961.

**564**

H. Paul Burak, New York City (Anthony F. Marra, New York City), for relator-appellant.

Herbert J. Wallenstein, New York City (Louis J. Lefkowitz, Atty. Gen., Paxton Blair, Sol. Gen., Albany, N. Y., Irving Galt, Asst. Sol. Gen., New York City, and Herbert J. Wallenstein, Asst. Atty. Gen., on the brief), for appellee.

Before LUMBARD, Chief Judge, GOODRICH * and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

Adolph Kulikauskas, convicted in Queens County Court in 1947 of rape, kidnapping and assault with respect to two women, petitioned the District Court for the Northern District of New York for a writ of habeas corpus in 1959. He alleged that, in violation of rights guaranteed him by the Fourteenth Amendment, coerced confessions had been received at his trial, the jury had been wrongly charged as to the issue of coercion, and the alleged refusal of the committing magistrate to assign counsel or permit petitioner to speak at the magistrate's hearing had prejudiced petitioner's subsequent trial. After reviewing the record of the state court proceedings, Judge Brennan denied the application, with an opinion but without hearing. He granted a certificate of probable cause, and Kulikauskas appealed *in forma pauperis*. We affirm.

The crimes charged against Kulikauskas occurred on March 16 and March 20, 1947. They followed a similar pattern. Each of the women claimed she had been struck by a car, placed in it on the pretense she was being taken to a hospital for treatment, driven to a secluded spot and then assaulted and raped. Injuries in both cases and intercourse in the second were amply proved by medical testimony. As to the first incident there was no need to offer medical evidence of intercourse nor any problem of identification, since at the trial petitioner admitted sexual relations with the complainant, his story being that she had accepted a pickup and freely consented to intercourse; her injuries were not explained. He denied knowledge of the second complainant and claimed he had returned home that morning considerably earlier than the time of the incident; his wife testified to the same effect.

On May 4, 1947, petitioner was asked to come to a police station in Queens. He arrived shortly after noon, was identified by the woman involved in the March 16 incident, and was arrested. Later that day he was also identified by the victim of March 20. Shortly thereafter he confessed. Statements were taken, beginning about 4 P.M., and were signed around 6 P.M.

On the following day, petitioner was brought before a magistrate in Felony Court on a complaint relating to the March 20 incident. At the outset the magistrate told him, "You may adjourn this case, put it over for some other day so you can get the advice of friends and relatives and engage an attorney if you wish. What do you want to do?" Kulikauskas responded he had no funds for an attorney. He was told that the State did not provide counsel prior to indictment but that if he was indicted, the County Court would assign counsel if he was unable to provide his own. After considerable further colloquy along these lines, during which the magistrate inquired "Are there any questions you want to ask?", the magistrate said:

"Well, we don't provide any lawyer for you, if you can't afford a lawyer. All we do in this Court is hear the complainant. You have no

* Of the Third Circuit, sitting by designation.

chance to tell your story here. You can hear the complainant and police officer. If there are sufficient facts to justify my holding you for the Grand Jury, I will do so. If there is not, I will let you go."

The magistrate was in clear error in saying petitioner could not tell his story; N.Y.Code of Criminal Procedure, § 196, provides that he may. Petitioner said he "would like to hear the complainant." She testified substantially as she later did at the trial; the arresting officer corroborated her story as to her complaint to the police and testified to defendant's admissions at the police station.

The magistrate held petitioner for action by the grand jury, which indicted him for rape, kidnapping and assault as to both episodes. After indictment Kulikauskas, then represented by counsel, was taken before Judge Farrell in County Court to plead; neither he nor his counsel complained of any mistreatment by the police.

At trial petitioner's counsel objected to the admission of the two signed confessions. Kulikauskas testified that before confessing he had been held by two officers while a third kicked him for about an hour, and that when he was unable to walk and was willing to admit anything, he was taken before an Assistant District Attorney and his answers recorded for signature. He testified also that he complained to the prison physician of mistreatment by the police and requested, but did not receive, medical treatment or an examination, the doctor merely giving him pills. The claims of violence were denied by the officers, the Assistant District Attorney, and the stenographer who had taken the statements, the two latter also testifying to absence of complaint by petitioner. The physician, who had visited the prison on May 5, denied that petitioner had requested treatment on that day or later; his records showed that petitioner's only complaints were of headache and constipation, for which the doctor administered pills.

On cross-examination the prosecutor elicited, without objection, that petitioner had made no complaint about beatings to the Assistant District Attorney, the committing magistrate, or the judge before whom his plea was taken. Defense counsel made no attempt to show why Kulikauskas had remained silent on any of these occasions. At the conclusion of redirect examination, the trial judge asked to see the minutes of the hearing before the magistrate. Counsel then requested and received permission to read aloud from these minutes as much as he wished. He read a substantial portion but not the magistrate's remark "You have no chance to tell your story here."

After fairly reciting the evidence as to coercion of the confessions, the trial judge told the jury:

"He stated he made no complaint to the Magistrate before whom he was arraigned the next day in the Felony Court or the day after, he made no complaint about police brutality, made no complaint to Judge Farrell about police brutality.

"You are to consider all that evidence in determining whether or not this confession is the voluntary act of this defendant or whether it is an involuntary act."

No objection was made to this part of the charge.

The judge further charged that no involuntary statements might be used as evidence. He said: " * * * when it is involuntary, even if true, it must not be considered." He continued, "Whom do you believe? * * * Who is telling the truth? Was this defendant telling the truth when he took the stand? If he is, you must acquit him and disregard those statements in their entirety." He declared the statements must be disregarded if they were not true, and also if they were involuntary; but "if you believe from all the evidence before you and the evidence given to you by those whom you have seen and listened to, that the truth lies there, that they were voluntarily made, then you may consider

566

every word in them that was voluntarily uttered * * *". Again there was no objection.

The jury found Kulikauskas guilty on all counts. He was sentenced to concurrent terms, the most severe being twenty years to life, on the counts of rape, kidnapping, and assault with intent to rape, and to an indeterminate sentence on one count of intentional assault, to be commenced at the expiration of his other sentences. The Appellate Division affirmed without opinion, People v. Kulikauskas, 2d Dept. 1948, 273 App.Div. 978, 79 N.Y.S.2d 327, and leave to appeal to the Court of Appeals was denied.

In 1957 petitioner brought a *coram nobis* proceeding in the County Court, Queens County, based on the magistrate's refusing to assign counsel and advising him that he could not tell his story. The writ was denied. The Appellate Division affirmed, 2d Dept. 1957, 5 A.D.2d 690, 168 N.Y.S.2d 995, 996, on the ground that since all these facts had been established on the trial, "*coram nobis* may not be invoked, even if it be assumed that the alleged errors occurring in the Felony Court could be the basis for setting aside a conviction in the County Court," citing People v. Sadness, 1949, 300 N.Y. 69, 74, 89 N.E.2d 188, 189, certiorari denied, Sadness v. State, 1950, 338 U.S. 952, 70 S.Ct. 483, 94 L.Ed. 587, and other New York cases. Leave to appeal to the Court of Appeals was denied; this time, although not before, certiorari was sought. It was denied, 1958, 357 U.S. 909, 78 S.Ct. 1157, 2 L. Ed.2d 1160. Thereupon Kulikauskas brought this *habeas corpus* petition. He has since been paroled from his concurrent sentences and is serving the indeterminate sentence for intentional assault.

■ Little need be said in regard to petitioner's complaint that Judge Brennan failed to grant him an evidentiary hearing. Where, as here, there is a complete record of the state court proceedings, and a petitioner urges factual issues resolved against him there, an evidentiary hearing in Federal *habeas corpus* is not required unless there is a "vital flaw" in the state court fact-finding process, which we do not find, Brown v. Allen, 1953, 344 U.S. 443, 506, 73 S.Ct. 397, 97 L.Ed. 469; Rogers v. Richmond, 1958, 357 U.S. 220, 78 S.Ct. 1365, 2 L.Ed.2d 1361, on subsequent appeal, 2 Cir., 1959, 271 F.2d 364, reversed on other grounds, 1961, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed. 2d 760, or new testimony which petitioner excusably failed to produce at his trial, United States ex rel. Alvarez v. Murphy, 2 Cir., 1957, 246 F.2d 871. Here the only new evidence alleged by petitioner is further testimony on his own part as to alleged mistreatment fourteen years ago, which, of course, has always been available to him. Moreover, since these allegations were not advanced in the *coram nobis* proceeding, it is questionable whether the district judge could have considered them in any event. See United States ex rel. Lilyroth v. Ragen, 7 Cir., 1955, 222 F.2d 654, 656.

■ There is also serious doubt whether we may entertain petitioner's other claims—the alleged application of an improper standard of voluntariness, the failure to assign counsel at the initial hearing in the Felony Court, and the effect of this and the magistrate's quoted remark on the subsequent trial. The first two of these appeared in full and the last in part on the face of the record on petitioner's trial and could have been made the basis for an application for certiorari when the Appellate Division affirmed petitioner's conviction and leave to appeal to the Court of Appeals was denied. The alleged error in the charge was not and under New York practice could not have been advanced in the *coram nobis* proceeding; and the Appellate Division held that, for the same reason, the issues as to the magistrate's hearing were also not properly before it in *coram nobis*. However, we prefer to rest our decision with respect to these issues on the merits rather than on failure to comply with the exhaustion requirement of 28 U.S.C. § 2254.

It is altogether plain that, if the facts were as testified by the People's witnesses, which we must assume if the issue was properly submitted to the jury, this was not a case where coercion existed as a matter of law. See United States ex rel. Daniel v. Wilkins, 2 Cir., 1961, 292 F.2d 348. We find no such error in the manner in which the issue of voluntariness was submitted as was present in Rogers v. Richmond, 1961, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760. There the trial judge charged the jury that "the fact that a confession was procured by the employment of some artifice or deception does not exclude the confession if it was not calculated, that is to say, if the artifice or deception was not calculated to procure an untrue statement. * * The object of evidence is to get at the truth, and a trick or device which has no tendency to produce a confession except one in accordance with the truth does not render the confession inadmissible. * * * " Here the trial judge five times in his charge as to rape, and once more in discussing the kidnapping counts, explicitly told the jury an involuntary confession must be disregarded even if true. Although the word "truth" did appear several times during the charge, it is plain the judge was referring to the truth of the testimony whether the defendant had been abused, not to the truth of the confession, and no objection was made. The jury was told most explicitly that if it found the statements "were made under duress and abuse and kicking and beating," as claimed by petitioner, it must "disregard every word."

█ The record in the magistrate's hearing shows petitioner was advised that he was entitled to representation by counsel and to an adjournment of the hearing until he could procure one. The Supreme Court has not laid down a requirement that counsel be invariably assigned to represent allegedly indigent state court defendants even at the trial of non-capital cases despite the urging of a minority that it do so, McNeal v. Culver, 1961, 365 U.S. 109, 117, 81 S.Ct. 413, 5 L.Ed.2d 445. Much less has it held that due process demands such assignment, in a non-capital case, at a hearing whether a prospective defendant should be held for a grand jury. The serious thrust of petitioner's argument is thus not the mere failure to assign counsel at the magistrate's hearing but rather that, because of his lack of counsel and his belief that the magistrate would not hear a complaint of police brutality, he failed to complain about this and his failure was later used to his prejudice when the issue of the voluntariness of the confessions was explored at the trial.

We do not believe that under all the circumstances New York so deprived petitioner of "that fundamental fairness essential to the very concept of justice," Lisenba v. People of State of California, 1941, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166, as to require a new trial fourteen years after the event. Petitioner was represented by counsel when arraigned before Judge Farrell, only three weeks after the magistrate's hearing. Admittedly no complaint was made then or at any time thereafter until the confessions were offered at the trial; and the People argued to the jury the silence on this occasion along with petitioner's failure to complain to the magistrate. No objection was made to the question on cross-examination as to petitioner's failure to complain before the magistrate, and the circumstances mitigating the probative effect of his conduct on that occasion were appropriate matters for rebuttal by defense counsel. The trial court gave petitioner full opportunity to introduce whatever evidence on this subject he wished, and a substantial portion of the transcript of the magistrate's hearing was read to the jury. We cannot predicate a denial of petitioner's constitutional rights on the failure of his counsel to read the passage that would have helped the most. It would have been preferable if under the circumstances the People and the judge had refrained from commenting on petitioner's silence before the magistrate; but we cannot believe that, with all the evidence the jury had on the issue of voluntariness,

this one item, weakened as it was by the reading of a portion of the transcript, was what tipped the scale.

The Court expresses its deep appreciation to H. Paul Burak, Esq., assigned counsel, for his effective presentation of petitioner's case.

Affirmed.