**UNITED STATES** of America ex rel. Joseph **GALLO**, Relator-Petitioner,

v.

Harold W. **FOLLETTE**, Warden, Green Haven Prison, County of Dutchess, State of New York, Respondent.

No. 67 Civ. 532.

United States District Court
S. D. New York.

July 6, 1967.

Marvin B. Segal, New York City, for relator-petitioner.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for respondent, Joel Lewittes, Asst. Atty. Gen., of counsel.

## OPINION

WEINFELD, District Judge.

Petitioner, presently confined in Green Haven Prison, serving sentences of from seven years and three months to fourteen years and six months imposed pursuant to judgments of conviction entered in the former Court of General Sessions, New York County, for conspiracy and attempt to commit extortion,[1] seeks a writ of federal habeas corpus upon the ground that his rights under the Sixth and Fourteenth Amendments were abridged at his trial. He claims he was (1) denied the right to be represented by counsel of his own choice, and (2) deprived of a fundamentally fair trial by an impartial jury when the trial court "required" the selection of a single juror, which action, under New York law, precluded a ruling of a pending motion before the Appellate Division based on alleged prejudicial publicity.

Petitioner, following his indictment on May 26, 1961, retained the law firm of Price & Iovine, of which firm David Price was to act as trial counsel. The case was moved for trial on June 21, 1961, at which time the prosecution announced it was ready, but defense counsel pleaded another engagement. An adjournment was granted to August 7, when the state again was prepared to proceed and pressed for a prompt trial, but again an adjournment was granted because petitioner's trial counsel was away on a three-week vacation under his doctor's orders. The trial court postponed the trial to August 30, when it set October 23 as a firm trial date, to which all counsel were committed. Notwithstanding, on October 23 still another adjournment was sought on the ground that petitioner's trial counsel was engaged in another matter. Also urged in support of the adjournment was that petitioner intended to move in the Appellate Division for a change of venue on the ground of prejudicial publicity.[2] Once again the state resisted and pressed for trial. The court, however, adjourned the case for another week to October 30, but advised petitioner's counsel that any motions for change of venue were to be made during that week.

Petitioner's counsel, instead of moving forthwith, waited until the very morning of the trial, October 30, when for the first time he applied in the Appellate

1. N.Y. Penal Law, McKinney's Consol.Laws, c. 40, §§ 2, 580–a, 850, 851.

2. Under § 346, N.Y.Code Crim.Proc., an application for transfer "must be made to the appellate division of the supreme court in the department within which the indictment is pending * * *."

Division for a transfer, returnable November 8; he failed, however, to apply for a stay of trial pending the determination of the motion,[3] a matter of singular importance, since, under New York's statute, an order transferring a prosecution is of no effect unless filed before a juror is sworn to try the indictment.[4]

The state, having been served with motion papers at the very moment the case was to have proceeded to trial on October 30, pressed that it begin but the defense, based upon its just-filed motion in the Appellate Division, sought a further adjournment. Despite disregard of its previous admonition that *any* motion for a change of venue was to have been made during the preceding week, the court again adjourned the trial until 2:30 p. m. that afternoon to enable petitioner to apply to the Appellate Division for a stay of the trial. The application was heard on the merits by Associate Justice McNally of the Appellate Division, to whom were submitted affidavits and original newspaper clippings in support thereof. Decision was reserved, and on the following day, October 31, the stay was denied, thus seemingly clearing the way for an immediate trial. But it did not get started. Petitioner, undeterred by the denial of the stay, again applied for an adjournment, this time upon representations that trial counsel was then in Florida, that he was ill, that his wife was ill, that his physician had ordered him to take a month's vacation, and that "he had no intention of returning to New York before December the 4th." No affidavit or physician's certificate was then submitted. Once again the court granted an adjournment, this time until November 6, instructing petitioner to "immediately make arrangements for another lawyer," and admonishing him that no further delay would be tolerated.

On November 3 petitioner's counsel renewed and reargued his motion for a stay of the trial, and again Justice McNally denied it on the merits. In these various applications before the trial court for adjournments and before the Appellate Division for a stay of the trial, petitioner was represented by Robert I. Weiswasser, Esq., an attorney associated with the law firm of which trial counsel was a senior partner, and of which, incidentally, petitioner's uncle also was a senior partner and who on several occasions appeared in support of adjournment applications.

On the same day that petitioner's renewed motion for a stay was denied by Justice McNally, the trial court inquired of petitioner whether he had retained substitute counsel so that the trial could proceed on its then scheduled date, November 6. He advised the court that he had not, and thereupon the court assigned Mr. Weiswasser and Irving Mendelson, a former Assistant District Attorney and an eminent and highly respected member of the Bar with many years of experience as defense counsel in criminal matters. The court announced that in view of the extensive adjournments already granted and the two rulings by Appellate Division Justice McNally, no further delays or maneuvers would be tolerated, and that the case was to proceed to trial on November 6.

The state's insistence upon the trial getting underway was grounded upon a number of factors. The petitioner had a record of four prior convictions; the indictment which charged conspiracy and attempted extortion included allegations of assaults upon and threats of grave injury to the complaining witness by petitioner. The witness was in protective, round-the-clock custody, requiring the daily services of ten city detectives at considerable cost to the city. The wit-

---

3. N.Y.Code Crim.Proc. § 344 authorizes removal of cases to another county "on the ground that a fair and impartial trial cannot be had in the county where the indictment is pending." In order to permit the determination of a change of venue motion, § 347 empowers a justice of the

Supreme Court of the Appellate Division to stay the commencement of trial "upon good cause shown."

4. N.Y.Code Crim.Proc. § 353. Cf. People v. Pugach, 28 Misc.2d 926, 215 N.Y.S.2d 978 (Sup.Ct.1961).

ness nevertheless was "extremely nervous," in "great fear," and wanted "to run." The petitioner and his counsel knew of this protective custody as early as May 1961. Moreover, the prosecution claimed that despite the protective custody, various persons had approached the witness in efforts to induce him to repudiate his charges. Accordingly, on November 6, by which time the witness had been in protective custody for six months, the prosecution continued to press for an immediate trial, and in order to forestall any further attempt to delay the trial based upon contentions by petitioner's codefendants, consented to severances, leaving petitioner as the sole defendant.

Mr. Mendelson, who upon his appointment had been designated as lead counsel, informed the court that following his appointment petitioner refused to confer with him or co-counsel, Mr. Weiswasser, and consequently he was not ready for trial. The trial court, after reviewing the various moves by petitioner and his privately retained counsel, observed that the due administration of justice was at issue and ordered the case to proceed. Mr. Mendelson stated he was prepared to pick a single juror to get the trial started, if a continuance were granted to December 4. The adjournment to that date was denied, but Mr. Mendelson, still seeking to gain a postponement of the trial proper, stated he was prepared then and there to select "one juror." A single juror was selected. The court thereupon granted an eight-day continuance, to November 14, to enable Mr. Mendelson and associate counsel to prepare for trial and alternatively to afford privately retained trial counsel the opportunity to return from Florida and defend petitioner.

On November 14 assigned counsel informed the court that petitioner still refused to cooperate with them, that he rejected their representation, that he wished only to be represented by Mr. Price, that upon petitioner's instructions they were to remain mute; moreover, that Mr. Price from Florida had likewise issued instructions that court-appointed counsel were not to participate in the trial. Under the circumstances, assigned counsel also remained mute but sat with him throughout the entire trial.

■ Other factors need be noted. At the time trial counsel was retained he was seventy-three years of age, and for the preceding year had been under a physician's care because of ill health and advancing years; he had been advised to take protracted rests and vacation periods, and as a result was in semi-retirement. On October 23, when, notwithstanding it had been fixed as a firm trial date, a week's adjournment was granted to October 30 to permit petitioner to move for a change of venue, the trial court was not informed that Mr. Price would be unavailable for trial on that day, or, as appears from an affidavit subsequently filed, that he had planned to leave for Florida on October 26,[5] there to remain until December 4.

I

■■ Petitioner first contends that the court's refusal to grant an additional continuance to December 4 for the return of Mr. Price violated his right to counsel of his choice under the Sixth Amendment. But petitioner's right to private counsel is not without limitation; it does not include the right to defeat or impede the orderly processes of due administration of justice.[6] His right to

5. According to Mr. Price's affidavit, he had sold his New York home, bought one in Florida, and moved there on October 26. Not only was the court not informed of this when the adjournment was sought on October 23, but at that time the request for a continuance was based upon Mr. Price's engagements in other proceedings without any disclosure of his con-

templated departure for Florida three days later. These are circumstances which the court could properly take into account in passing upon the various applications for continuance. Compare Ungar v. Sarafite, 376 U.S. 575, 591, 84 S. Ct. 841, 11 L.Ed.2d 921 (1964).

6. United States v. Llanes, 374 F.2d 712, 717 (2d Cir. 1967); United States v.

counsel of his own choice is limited by the state's right to proceed to trial upon an indictment after he has been afforded a fair opportunity to engage his own counsel and adequate time to prepare his defense—and the record here abundantly shows this right was afforded to him in liberal, if not excessive degree.

■ The determination of a continuance is within the discretion of the trial court, and absent a clear abuse of discretion, a denial affords no basis for a claim of deprivation of the right to counsel.[7] There is no abuse of discretion and no constitutional error where a continuance is denied to retain counsel on the ground that "the inability of retained counsel to serve gives the promise of unreasonable delay or inconvenience in completing the trial," [8] and in such instance, "the court may require the defendant to secure other counsel." [9]

■ Petitioner had more than ample time both for preparation for trial and for retention of private counsel. He had a period of almost two months from the time October 23 was fixed as the firm trial date; he had one week from October 31, when he was instructed by the court "to immediately make arrangements for another lawyer"; upon his failure to do so, he still had three days, from November 3 to November 6, to confer with court-assigned counsel, which he refused to do; and even after that, after the juror was selected on November 6, he had an additional eight days, to November 14, either to cooperate with court-assigned counsel, secure new counsel of his choice, or see to it that his privately retained counsel returned from Florida to represent him on November 14, to which date the trial had been adjourned. Any contention that he was deprived of a full and fair opportunity, both in preparation and retention of counsel, in the light of this record, is specious.[10]

The action of petitioner and his counsel, whether calculated or otherwise, interfered with the orderly process of the due administration of justice. The retention by petitioner of an elderly and semi-retired lawyer who, because of his physical condition, required protracted rest and vacation periods and could not engage in regular and sustained trial activity, does not serve as an excuse for interference with the orderly trial

Bentvena, 319 F.2d 916, 936 (2d Cir), cert. denied, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963). See also United States v. Burkeen, 355 F.2d 241 (6th Cir.), cert. denied sub nom. Matlock v. United States, 384 U.S. 957, 86 S.Ct. 1582, 16 L.Ed.2d 553 (1966); United States v. Abbamonte, 348 F.2d 700 (2d Cir. 1965), cert. denied, 382 U.S. 982, 86 S.Ct. 557, 15 L.Ed.2d 472 (1966); Cleveland v. United States, 116 U.S.App.D.C. 188, 322 F.2d 401, cert. denied, 375 U.S. 884, 84 S.Ct. 157, 11 L.Ed.2d 114 (1963); United States v. Terranova, 309 F.2d 365 (2d Cir. 1962).

7. Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); Avery v. State of Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377 (1940); United States v. Bentvena, 319 F.2d 916, 934–35 (2d Cir.), cert. denied, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963); Torres v. United States, 270 F.2d 252, 255 (9th Cir. 1959), cert. denied, 362 U.S. 921, 80 S.Ct. 675, 4 L.Ed.2d 741 (1960); United States v. Arlen, 252 F.2d 491, 495 (2d Cir. 1958); Kobey v. United States,

208 F.2d 583, 592–594 (9th Cir. 1953); Spevak v. United States, 158 F.2d 594, 597 (4th Cir. 1946), cert. denied, 330 U.S. 821, 67 S.Ct. 771, 91 L.Ed. 1272 (1947).

8. United States v. Bentvena, 319 F.2d 916, 936 (2d Cir.), cert. denied, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963).

9. Ibid.

10. United States v. Mitchell, 354 F.2d 767 (2d Cir. 1966), relied upon by petitioner, is so completely distinguishable from the instant case as to bear no reasonable relationship. That case involved no chronology of delay comparable to the instant case, nor a compelling government reason to avoid undue delay. That defendant had five days to secure counsel; this petitioner, in effect, had two weeks. Finally, unlike *Mitchell*, the trial of the instant case did not involve complex issues with First Amendment overtones, or the difficulty in obtaining counsel to defend an unpopular cause. Compare Ungar v. Sarafite, 376 U.S. 575, 590–591, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964).

process, particularly so where petitioner was afforded more than an adequate and fair opportunity to retain other counsel and to prepare his defense. The fact of the matter is that, to the extent he was able, petitioner's trial counsel saw fit to engage in other cases rather than this one, which the state, for obvious and fully justified reasons already noted, was seeking to have go forward.

The trial court not only did not abuse its discretion, but displayed Rhadamanthine [11] forbearance and patience in dealing with petitioner's numerous requests and excuses for continued postponement. Petitioner's constitutional right to counsel was not violated.

## II

Petitioner next contends that he was unconstitutionally denied access to a pretrial procedure to test his claim of undue publicity. He argues that the trial court, by "requiring" selection of a juror while his motion for a change of venue based upon alleged prejudicial publicity was pending before the Appellate Division, rendered his motion moot [12] and thereby deprived him of his Fourteenth Amendment right to a fair trial.

At the outset, two significant matters merit notice: First, petitioner's claim that the court "required" selection of the one juror is not supported by the record.

It is abundantly clear that the decision to select a juror was made by Mr. Mendelson [13] in furtherance of what he conceived to be petitioner's best interests, and further that, under all the circumstances already adverted to, Mr. Mendelson was properly assigned to act in his behalf.[14] Nevertheless, petitioner seeks not only to overturn, six years after the event, the strategy of trial counsel, but additionally, to charge the court for his counsel's strategic decision.

Second, at no time has petitioner presented to the state courts, either upon direct appeal or collateral attack, the essential facts upon which he must necessarily rely to sustain his claim that prejudicial publicity deprived him of a fundamentally fair trial. Whatever the reason, petitioner has studiously avoided presenting the substance of that claim. There, as here, he limited his contention to the procedural circumstances of the selection of a juror and denial of a continuance, claiming that the preclusion of consideration by the Appellate Division of his change of venue motion itself deprived him of a fair trial.

Petitioner's argument necessarily rests upon the hypothesis that the Federal Constitution requires that the states provide a procedure whereby, in advance of trial, a defendant may raise and have determined a claim of prejudicial pub-

11. Cf. United States v. Dennis, 183 F.2d 201, 226 (2d Cir. 1950), aff'd, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951).

12. See People v. Gallo, 14 A.D.2d 857, 221 N.Y.S.2d 280 (1st Dep't 1961).

13. On November 6, the following transpired:
  "The Court: Now, Mr. Mendelson, you did say something about picking one juror?
  "Mr. Mendelson: *That was my request, your Honor.*
  "The Court: Do you still press that request?
  "Mr. Mendelson: *I urge it upon your Honor.* The difficulty that is imposed upon counsel where the defendant does not cooperate make it difficult—much more difficult for the lawyer than normally." Record, p. 133. [Emphasis supplied.]

14. See United States v. Jones, 369 F.2d 217, 219 (7th Cir. 1966); United States ex rel. Maldonado v. Denno, 348 F.2d 12, 14–16 (2d Cir. 1965), cert. denied sub nom. DiBlasi v. McMann, 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966); McGill v. United States, 121 U.S.App.D.C. 179, 348 F.2d 791, 794–95 (1965); Dearinger v. United States, 344 F.2d 309, 311 (9th Cir. 1965); United States v. Bentvena, 319 F.2d 916, 934–937 (2d Cir.), cert. denied, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963); Sanchez v. United States, 311 F.2d 327, 332 (9th Cir.), cert. denied, 373 U.S. 949, 83 S.Ct. 1678, 10 L.Ed.2d 704 (1963); Brown v. United States, 105 U.S.App.D.C. 77, 264 F.2d 363, 365–67, cert. denied, 360 U.S. 911, 79 S.Ct. 1299, 3 L.Ed.2d 1262 (1959).

licity; further, that where such a procedure is provided, the failure of the courts to pass upon an application in advance of trial is an error of constitutional dimension. According to this hypothesis, the failure to pass upon such a pretrial application is itself a ground for vacating a judgment of conviction, without regard to the nature or intensity of the publicity or whether the defendant did receive a fair trial on the issue of guilt. This somewhat elusive constitutional claim, which exalts form and disregards substance, dissolves upon consideration.

■■ The evil of intensive pretrial publicity is that a defendant's right to an essentially fair trial may be prejudiced by the introduction of outside, extraneous influence upon the jury.[15] Correspondingly, the purpose of pretrial procedures for determining whether there has been undue publicity is to avoid or minimize the probability of such extraneous prejudicial influence so that the jury's verdict is based solely on evidence received in open court.[16] Petitioner's narrow and procedurally oriented argument, based solely upon the mooting of his motion for change of venue, ignores this purpose. Accepting his argument would mean that a defendant would be entitled automatically to vacate a judgment of conviction on the basis that his motion was precluded under statutory change of venue pretrial procedures without any showing that he is within the class for whose protection such procedures are intended[17]—that is, that the publicity in his case was sufficiently intense to create a probability of prejudice. This is not the law.[18]

■ The constitutional issue presented by the alleged failure of the Appellate Division to hear his motion is the same as if it had been heard and denied. The issue is whether, notwithstanding such failure, petitioner was accorded a trial free of extraneous and prejudicial influences. If, upon a post-conviction review, petitioner could establish that the publicity was of such a potentially prejudicial nature as to have interfered with his right to a fair trial, he would be entitled to relief. Determination of such an issue requires analysis of the newspaper clippings, which have never been presented to any state court reviewing his conviction.[19]

Parenthetically, and entirely apart from the foregoing, the fact is that even with respect to his narrow procedural position, petitioner was afforded a pretrial opportunity to establish the sub-

---

15. See Sheppard v. Maxwell, 384 U.S. 333, 350–57, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).

16. Id. at 357–63, 86 S.Ct. 1507.

17. Cf. Wong Sun v. United States, 371 U.S. 471, 492, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Goldstein v. United States, 316 U.S. 114, 121, 62 S.Ct. 1000, 86 L.Ed. 1312 (1942); Hendrick v. State of Maryland, 235 U.S. 610, 621, 35 S.Ct. 140, 59 L.Ed. 385 (1915); George v. United States, 196 F.2d 445, 452 (9th Cir.), cert. denied, 344 U.S. 843, 73 S.Ct. 58, 97 L.Ed. 656 (1952).

18. None of the cases relied on by petitioner suggests that a denial of access to pretrial procedures affords a basis for vacating a conviction without a showing of potential prejudice. In Irvin v. Dowd, for example, 366 U.S. 717, 727–28, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), the court found actual prejudice. Sheppard v. Maxwell, 384 U.S. 333, 363, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), indicates that a continuance or transfer should be granted where there is a reasonable likelihood of prejudice. Pamplin v. Mason, 364 F.2d 1, 6 (5th Cir. 1966), assuming its authority, is not to the contrary. While the record there was scanty, the court clearly found indications that there was a possibility of prejudice.

19. In support of the instant application, petitioner has submitted the newspaper clippings upon which his motions for a change of venue and connected stay were based. Although these clippings were on file in the Appellate Division when his direct appeal was decided, petitioner's Brief on Appeal did not rely on or even mention them, much less request the Appellate Court to take judicial notice of them. It is not disputed that they were not before the Appellate Court which affirmed his judgment of conviction.

stance of his claim of undue publicity. He was granted two lengthy arguments before a Justice of the Appellate Division on his motion for a stay. The Justice had before him all the newspaper exhibits and denied the stay. Additionally, petitioner here, unlike in Pamplin v. Mason,[20] upon which he so strongly relies, could have, had he participated in the trial instead of remaining mute, challenged prospective jurors for bias by voir dire examination.[21] Had he done so, he would have had the double benefit of a pretrial screening device and the preservation of a record for appeal. That petitioner here chose not to take advantage of this procedure is not the equivalent of an absence of or denial of access to such procedure.

■ In any event, petitioner, by failing to submit to the state courts the real issue of the fundamental fairness of his trial, based upon the newspaper clippings, has failed to exhaust his state remedies,[22] and since, as hereafter discussed, it appears that he has presently available state remedies in the New York courts, his claim must fail.

It is of significance, on the issue of exhaustion of available state remedies, that petitioner's principal reliance in support of his constitutional claim is a line of cases, the first of which was not decided until after he was convicted. Until 1963, the United States Supreme Court had ruled that a claim of prejudicial publicity would not serve to void a judgment of conviction unless it were shown that a juror. was thereby *in fact* prejudiced.[23] In 1961 and 1962, in Irvin v. Dowd and Beck v. State of Washington, respectively, the court remained true to this rule, holding that there must be shown a clear nexus between publicity-inspired community prejudice and its impact upon the trial.[24]

■ Petitioner, however, relies upon a different and more recent line of cases,[25] which has changed the test from prejudice in fact to the probability of prejudice and seemingly has shifted the

20.  232 F.Supp. 539, 540 (W.D.Tex.1964), aff'd, 364 F.2d 1 (5th Cir. 1966).

21.  See N.Y.Code Crim.Proc. §§ 376, 383.

22.  The procedural issue raised upon direct appeal was a different even if related issue; in any event, it is clear that having failed to present the relevant facts, petitioner has never directly and fairly presented the substance of his claim that he was deprived of a fair trial to any state court reviewing his conviction. See Fay v. Noia, 372 U.S. 391, 419–20, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); United States ex rel. McBride v. Fay, 370 F.2d 547, 548–49 (2d Cir. 1966); Schiers v. People of State of California, 333 F.2d 173, 175–76 (9th Cir. 1964); Rose v. Dickson, 327 F.2d 27, 29–30 (9th Cir. 1964); Tune v. Cunningham, 319 F.2d 823, 824 (4th Cir. 1963); United States ex rel. Kulikauskas v. Murphy, 293 F.2d 563 (2d Cir. 1961); United States ex· rel. Jiggetts v. Follette, 260 F.Supp. 301, 302 (S.D.N.Y.1966); United States ex rel. Ortiz v. Wallack, 237 F.Supp. 854, 856 (S.D.N.Y.1965); United States ex rel. Kessler v. Fay, 232 F.Supp. 139, 142 (S.D.N.Y.1964).

23.  See Reynolds v. United States, 98 U.S. 145, 155–56, 25 L.Ed. 244 (1878); Hopt v. State of Utah, 120 U.S. 430, 7 S.Ct. 614, 30 L.Ed. 708 (1887); Spies v. People of State of Illinois, 123 U.S. 131, 179–80, 8 S.Ct. 21, 31 L.Ed. 80 (1887); Holt v. United States, 218 U.S. 245, 250–251, 31 S.Ct. 2, 54 L.Ed. 1021 (1910); Stroble v. State of California, 343 U.S. 181, 194–95, 72 S.Ct. 599, 96 L.Ed. 872 (1952); Irvin v. Dowd, 366 U.S. 717, 723–24, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); Beck v. Washington, 369 U.S. 541, 557–58, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962). See also United States ex rel. Bloeth v. Denno, 313 F.2d 364 (2d Cir.), cert. denied, 372 U.S. 978, 83 S.Ct. 1112, 10 L.Ed.2d 143 (1963).

24.  Irvin v. Dowd, 366 U.S. 717, 723–28, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); Beck v. State of Washington, 369 U.S. 541, 557–558, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962).

25.  Rideau v. State of Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); Estes v. State of Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Pamplin v. Mason, 364 F.2d 1 (5th Cir. 1966). See also Turner v. State of Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965).

constitutional focus to procedural or "remedial measures that will prevent the prejudice at its inception." [26] Not until 1966, in Sheppard v. Maxwell,[27] as petitioner's reliance thereon indicates, did this trend of case-law clearly emerge as a constitutional precept,[28] the court there stating:

> "But where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity." [29]

While *Sheppard* had perhaps been anticipated by Rideau v. State of Louisiana,[30] petitioner's conviction also predates *Rideau*,[31] and further, the facts and holding of *Rideau* are far removed from the instant petition and the broad language from *Sheppard,* quoted above. Thus, not only has petitioner never presented his claim to the state courts, but also, he re-

lies upon a "right" which did not clearly come into existence until after his conviction became final.[32] Under all the circumstances, the state courts must be given the first opportunity to rule on the alleged constitutional deprivations.[33]

■ Finally, despite petitioner's failure to test the merits of his claim of prejudicial publicity in the state courts, he is not without an available state remedy. Coram nobis may afford him the means to test his claim,[34] although he disputes this. Petitioner's argument that since he "followed the requisites of Appellate practice," he is foreclosed from coram nobis relief is not persuasive. People v. Shapiro,[35] upon which he relies, simply holds that coram nobis is not available to raise a claim which could have been but was not raised on direct appeal. This is, in effect, a waiver rule. Petitioner *did* raise on his direct appeal a claim related to alleged prejudicial publicity, but, as discussed previously, this claim presented only the procedural aspect and not the substan-

---

26. Sheppard v. Maxwell, 384 U.S. 333, 363, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).

27. 384 U.S. 333, 86 S.Ct. 1507 (1966).

28. Such a disposition under the Fourteenth Amendment is, of course, to be distinguished from a disposition under the Supreme Court's supervisory powers over the federal courts. See Marshall v. United States, 360 U.S. 310, 313, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959); Rideau v. State of Louisiana, 373 U.S. 723, 728–29, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) (dissent).

29. Sheppard v. Maxwell, 384 U.S. 333, 363, 86 S.Ct. 1507 (1966).

30. 373 U.S. 723, 83 S.Ct. 1417 (1963).

31. Petitioner was convicted on December 21, 1961, one and one-half years before *Rideau* was decided. His judgment of conviction was affirmed by the Appellate Division on June 27, 1963, about three weeks after *Rideau*. People v. Gallo, 19 A.D.2d 620, 241 N.Y.S.2d 383 (1st Dep't 1963). Leave to appeal to the Court of Appeals was denied on November 4, 1963, five months after *Rideau* and two and one-half years before *Sheppard*. Thereafter, the Supreme Court denied certiorari, Gallo v. New York, 376 U.S. 953, 84 S.Ct. 971, 11 L.Ed.2d 972 (1964). Sub-

sequently, in 1966, he sought and was denied state coram nobis relief, but he did not then present any claim relating to prejudicial publicity.

32. In such a circumstance, it is held that the state courts should have the opportunity to pass upon a petitioner's claim *in light of the intervening development* in constitutional law. See United States ex rel. DeLucia v. McMann, 373 F.2d 759, 762 (2d Cir. 1967); United States ex rel. Martin v. McMann, 348 F.2d 896, 898 (2d Cir. 1965); United States ex rel. Walker v. Fogliani, 343 F.2d 43, 47 (9th Cir. 1965); Miller v. Gladden, 341 F.2d 972, 975 (9th Cir. 1965); Blair v. People of State of California, 340 F.2d 741, 744 (9th Cir. 1965); Commonwealth ex rel. Raymond v. Rundle, 339 F.2d 598 (3d Cir. 1964); Hunt v. Warden, 335 F.2d 936, 943 (4th Cir. 1964); United States ex rel. Bagley v. LaVallee, 322 F.2d 890 (2d Cir. 1964).

33. See notes 22 and 32 supra.

34. People v. La Marca, 4 N.Y.2d 925, 175 N.Y.S.2d 167, 151 N.E.2d 353 (1958); United States ex rel. Tangredi v. Wallack, 343 F.2d 752, 753 (2d Cir. 1965).

35. 3 N.Y.2d 203, 165 N.Y.S.2d 14, 144 N.E. 2d 12 (1957).

tive issue of the fundamental fairness of his trial. However, analogous New York cases involving the sufficiency of a general objection made at trial to preserve a constitutional point for appellate review [36] strongly suggest that the claim petitioner made on direct appeal, however restricted to a procedural error, is sufficient to preserve his right to seek coram nobis relief based upon the intervening development in federal law.[37]

In any event, the recent expansion of the scope of state habeas corpus [38] for the redress of alleged constitutional wrongs offers another available avenue of relief which petitioner should exhaust before seeking federal intervention.[39] People ex rel. Keitt v. McMann [40] makes clear that the failure to have raised a constitutional issue on appeal will not foreclose habeas corpus relief if such is dictated "by reason of practicality and necessity." [41] Both the intervening constitutional development and petitioner's asserted inability to have squarely raised the substantive publicity issue on direct appeal suggests available relief within the *Keitt* doctrine.

Finally, as our Court of Appeals has stated with respect to a claim based on prejudicial publicity:

"[E]ven if there were some doubt as to the availability of relief in the New York courts, we still would give its courts the first chance to review their alleged errors so long as they have not

authoritatively shown that no further relief is available." [42]

The petitioner here has studiously and stubbornly avoided tendering the constitutional issue of alleged prejudicial publicity to the state courts.[43] There is no sound reason for not affording the state the opportunity to correct this claimed constitutional error, if such there be.

The petition is dismissed.

---

36. People v. O'Neill, 11 N.Y.2d 148, 152, 227 N.Y.S.2d 416, 182 N.E.2d 95 (1962); People v. Coffey, 11 N.Y.2d 142, 147, 227 N.Y.S.2d 412, 182 N.E.2d 92 (1962).

37. Cf. People v. Huntley, 15 N.Y.2d 72, 77, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965).

38. People ex rel. Keitt v. McMann, 18 N.Y. 2d 257, 273 N.Y.S.2d 897, 220 N.E.2d 653 (1966).

39. See Case v. State of Nebraska, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965); United States ex rel. Roberts v. LaVallee, 373 F.2d 49, 51 (2d Cir. 1967); United States ex rel. Paulding v. Mancusi, 368 F.2d 378 (2d Cir. 1966).

40. 18 N.Y.2d 257, 273 N.Y.S.2d 897, 220 N. E.2d 653 (1966).

41. Id. at 262, 273 N.Y.S.2d at 900, 220 N. E.2d at 655.

42. United States ex rel. Tangredi v. Wallack, 343 F.2d 752, 753 (2d Cir. 1965), quoting from United States ex rel. Bagley v. LaVallee, 332 F.2d 890, 892 (2d Cir. 1964).

43. This is not the first federal court to hold that petitioner, having failed to present to the state courts his claim of a fundamentally unfair trial, has failed to exhaust state remedies. In 1966 he filed a petition for habeas corpus in the Northern District of New York, which was dismissed in September 1966 in part upon this very ground. Instead of presenting the substantive publicity issue to the state courts, he filed the instant petition here.