UNITED STATES ex rel. Anthony J.
BONOMOLO, Relator,

v.

Walter M. WALLACK, Warden of Wall-
kill Prison, Wallkill, New York,
Respondent.

United States District Court
S. D. New York.

Feb. 2, 1965.

Anthony J. Bonomolo, pro se.

Louis J. Lefkowitz, Atty. Gen., by Brenda Soloff, New York City, of counsel, for respondent.

EDELSTEIN, District Judge.

This is an application for a writ of habeas corpus on the grounds that the applicant is being held in custody in violation of the Constitution of the United States. 28 U.S.C. § 2241(c) (3) (1959).

The applicant was tried in the New York County Court of General Sessions, now the Supreme Court, New York County, on a four-count indictment.[1] Counts two and four, both alleging the crime of criminally concealing and withholding stolen and wrongfully acquired property (diamonds), were submitted to the jury. Count two, insofar as it is relevant, charged that the defendant:

"in the County of New York, between on or about [sic] May 29, 1959 and on or about May 30, 1959 concealed * * * certain property, having an aggregate value in excess of $100,000, to wit, a quantity of diamonds. * * *"

and count four charged, in part, that the defendant:

"in the County of New York, on or about May 29, 1959 concealed * * certain property, having an aggregate value in excess of $500.00, to wit, a quantity of diamonds. * * *"

The jury found the applicant innocent on the second count and guilty on the fourth count. He alleges in substance that: (1) he was tried in New York County for a crime occurring in Queens County in violation of the Sixth Amendment to the Constitution; (2) he was exposed to double jeopardy in violation of the Fifth Amendment to the Constitution in that one of the two counts of the indictment

1. The entire indictment reads as follows:

"THE GRAND JURY OF THE COUNTY OF NEW YORK, by this indictment, accuse the above named defendant [ANTHONY J. BONOMOLO] of the crime of CRIMINALLY BUYING AND RECEIVING STOLEN PROPERTY, AS A FELONY, committed as follows:

"The defendant, in the County of New York, between on or about [sic] May 29, 1959 and on or about May 30, 1959 bought and received certain property, having an aggregate in excess [sic] value of $100,000, to wit, a quantity of diamonds the property of Martin A. Sherre, Jr., and Martin A. Sherre, Sr. doing business as M. A. Sherry & Co. which had been stolen and wrongfully acquired, said defendant then knowing the same to have been stolen and wrongfully acquired and intending to deprive said owner thereof.

"SECOND COUNT:

"AND THE GRAND JURY AFORESAID, by this indictment further accuse said defendant of the crime of CRIMINALLY CONCEALING AND WITHHOLDING STOLEN AND WRONGFULLY ACQUIRED PROPERTY, AS A FELONY, committed as follows:

"The defendant, in the County of New York, between on or about [sic] May 29, 1959 and on or about May 30, 1959 concealed and withheld and aided in concealing and withholding certain property, having an aggregate value in excess of $100,000, to wit, a quantity of diamonds the property of Martin A/ [sic] Sherre Jr. and Martin A. Sherre Sr. doing business as M. A. Sherry & Co. which had been stolen and wrongfully acquired, said defendant then knowing the same to have been stolen and wrongfully acquired and

intending to deprive said owner thereof.

"THIRD COUNT:

"AND THE GRAND JURY AFORESAID, by this indictment, further accuse said defendant of the crime of CRIMINALLY BUYING AND RECEIVING STOLEN PROPERTY, AS A FELONY, committed as follows:

"The defendant, in the County of New York, on or about May 29, 1959 bought and received certain property, having an aggregate value in excess of $500.00, to wit, a quantity of diamonds the property of Martin A. Sherre Jr. and Martin A. Sherre Sr. doing business as M. A. Sherry & Co. which had been stolen and wrongfully acquired, said defendant then knowing the same to have been stolen and wrongfully acquired and intending to deprive said owner thereof.

"FOURTH COUNT:

"AND THE GRAND JURY AFORESAID, by this indictment, further accuse said defendant of the crime of CRIMINALLY CONCEALING AND WITHHOLDING STOLEN AND WRONGFULLY ACQUIRED PROPERTY, AS A FELONY, committed as follows:

"The defendant, in the County of New York, on or about May 29, 1959, concealed and withheld and aided in concealing and withholding certain property, having an aggregate value in excess of $500.-00, to wit, a quantity of diamonds the property of Martin A/ [sic] Sherre Jr. and Martin A. Sherre S. doing business as M. A. Sherry & Co. which had been stolen and wrongfully acquired, said defendant then knowing the same to have been stolen and wrougfully acquired and intending to deprive said owner thereof.

FRANK S. HOGAN
District Attorney"

submitted to the jury was completely contained within the other count; and implicitly (3) that the indictment and judge's charge were so ambiguous that the resulting confusion of the jury (as demonstrated by the questions they asked of the judge) denied petitioner due process of law.

█ Petitioner's first contention is without merit. The uncontradicted testimony showed that all of the gems originated from the same holdup. Applicant acted as a middleman and took possession of some of the stolen gems on May 29, 1964 (in New York County) and took possession of the balance of the gems that night and the following day in Queens County. Since part of the crime alleged in the second count occurred in New York County and the remainder occurred in Queens County, venue for such a continuing offense would have been constitutionally proper in either county. See, e. g., United States v. Cores, 356 U.S. 405, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958); United States v. Johnson, 323 U.S. 273, 275, 65 S.Ct. 249, 89 L.Ed. 236 (1944); In re Palliser, 136 U.S. 257, 265–268, 10 S.Ct. 1034, 34 L.Ed. 514 (1890). In any case petitioner was found innocent on this count.

· The uncontroverted testimony also showed that all of the acts alleged in count four occurred in New York County. Clearly the court's venue was proper as to that count.[2]

Respondent, relying on Brock v. State of North Carolina, 344 U.S. 424, 73 S.Ct. 349, 97 L.Ed. 456 (1953); and Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149,

82 L.Ed. 288 (1937), urges that applicant's second allegation is not cognizable in habeas corpus because the double jeopardy provision of the Fifth Amendment is not applicable to states through the Fourteenth Amendment. Those cases also indicate, however, that the Fourteenth Amendment concept of fundamental fairness does limit a state's power to subject an accused to successive trials for the same offense. More recently, in Hoag v. State of New Jersey, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958), the Supreme Court held that the prosecution of a defendant for robbing a fifth victim, after the same defendant had been previously acquitted of robbing the other four victims of the same holdup, did not violate the fundamental fairness concept of the Fourteenth Amendment's due process clause. Since that decision, however, the concept of fundamental fairness has been expanded and recently the Court, in a case involving the Fifth Amendment privilege against self-incrimination, held that privilege fully applicable to the states through the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Whether the Supreme Court would now also hold the Fifth Amendment privilege against double jeopardy fully applicable to the states[3] need not be anticipated here. For even adopting *arguendo* such a contention the application must fail.

█ The government does not deny that the overlapping counts of the indictment satisfy the same evidence test of double jeopardy. See Kirchheimer, The Act, The Offense and Double Jeopardy, 58 Yale L.J. 513 (1949); Note, Double

2. There is nothing to indicate that any error in the venue of count two (even assuming such error existed) prejudiced applicant's trial on count four.

3. Little is gained speculating whether the federal double jeopardy rules are "constitutionally compelled [or whether they] * * * are merely products of the supervisory power of the federal courts." Note, Double Jeopardy: The Reprosecution Problem, 77 Harv.L.Rev. 1289 (1964). The Fourteenth Amendment already provides some double jeopardy pro-

tection, therefore the only purpose to be served by fully incorporating the Fifth Amendment provision into the Fourteenth Amendment would be to impose the federal standards. See Hoag v. State of New Jersey, 356 U.S. 464, 78 S.Ct. 829, 2 L. Ed.2d 913 (1958) (dissenting opinion of Mr. Justice Douglas). Those rules have been articulated in constitutional terms. See Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963) (majority opinion of Mr. Justice Douglas).

Jeopardy and the Multiple Count Indictment, 57 Yale L.J. 132 (1947). See generally Note, Statutory Implementation of Double Jeopardy Clauses, 65 Yale L.J. 339 (1956); Horack, The Multiple Consequences of a Single Criminal Act, 21 Minn.L.Rev. 805 (1937). It argues, however, that double jeopardy can only occur when the applicant "has been subject to more than one *prosecution* for the same crime." (italics added) There is language to support this view. See Downum v. United States, 372 U.S. 734, 736, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); cf. Kirchheimer, supra at 513–14, n. 2. The Court has, however, also ruled that:

> "the Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it." Ex parte Lange, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873).

See Reid v. Covert, 354 U.S. 1, 37–38 n. 68, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957); Note, Statutory Implementation of Double Jeopardy Clauses, supra. Since Ex parte Lange, courts have resorted to double jeopardy standards in determining the validity of multiple punishments flowing from multi-count indictments.[4] Albrecht v. United States, 273 U.S. 1, 11–12, 47 S.Ct. 250, 71 L.Ed. 505 (1927) (Brandeis, J.); Morgan v. Devine, 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153 (1915); Schroeder v. United States, 7 F.2d 60, 65 (2d Cir. 1925); see McGann v. United States, 261 F.2d 956 (4th Cir. 1958) (simultaneous guilty plea to two indictments). But in any event the applicant must fail because he was not subjected to multiple trial *or* multiple punishment. The trial judge effectively protected the applicant's rights by submitting the two counts to the jury in the alternative.[5] He was found guilty only on the fourth count and sentenced only on that count.

Applicant's final claim, that the jury's alleged confusion (as reflected in the questions asked [6] of the judge) denied applicant due process of law, must also

4. In Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958) consecutive sentences imposed for violating different narcotic statutes were upheld by a bare majority on the grounds that Congress' declaring the same acts violative of different statutes was analogous to a legislative decision increasing punishment. Id. at 392–393, 78 S.Ct. 1280. In the instant case, however, only one statute has been violated and therefore any increase in punishment would have resulted from the use of a factually overlapping indictment. See generally Note, Statutory Implementation of Double Jeopardy Clauses, supra at 339–44, 363–68.

5. The trial judge charged the jury that:
  "If you agree upon a verdict, it shall be as follows: On the fourth count, which alleges the amount of $100,000, guilty or not guilty of criminally concealing and withholding stolen and wrongfully acquired property as a felony.
  "Now, if you find the defendant guilty of that count, you shall not consider the next count. If you find the defendant not guilty of that count, then you shall proceed to consider the next count. The next count is the fourth count, and that alleges the amount of $500, and your

verdict there shall be guilty or not guilty of criminally concealing and withholding stolen and wrongfully acquired property as a felony.
  "I am told that I called each of them the fourth count. Well, of course, that is a mistake. I did not intend to, if I did. The first count involves the charge of jewelry worth $100,000, and that is the second count. The fourth count charges jewelry of $500, and that is the fourth count, as I have just said.
  "Now, you will understand, then, that these counts are being given to you in the alternative and not together."

6. The questions and answers were as follows:
  "The Court: Ladies and Gentlemen, I have a note signed by your Foreman which reads as follows: 'May we have a clarification of the money amounts in Counts No. 2 and 4 of the indictment. Is Count No. 2 in the amount of $100,000 or over? Is Count No. 4 in the amount of $500 to $99,999 or is it $500 or less? Please explain the technicality here.
  " 'The telephone book of Lanxter Jackson is requested.'
  "Addressing myself to the part of your question dealing with the amounts, I shall

be rejected. The transcript shows that the trial judge answered the written questions sent by the jury, but declined to answer the oral questions posed by the foreman, stating:

"I think it is better that you go back and discuss the question that you have in your mind; and if you still have the question, I prefer that you write it out and let us have it."

The jury then retired. They did not again propound any questions either orally or in writing before returning the verdict. Since the jury did not ask the court any further questions they must be deemed to have been satisfied as to the judge's instructions.[7] Moreover, all of the defendant's objections (which were characterized by the trial court as requests for additional instructions), made after the original charge to the jury, were granted. No objections, however, were made to the supplementary instructions given in response to the jury's written and oral questions. In the federal courts,

therefore, no assignment of error to the supplementary instructions could have been presented on appeal, Fed.R.Crim.P. 30, where the alleged errors were neither "plain" nor "substantial," Fed.R.Crim.P. 52(b); United States v. Haynes, 291 F. 2d 166, 167 (2d Cir. 1961), and did not "seriously * * * [affect] the substantial rights of defendant." United States v. O'Connor, 237 F.2d 466, 472 (2d Cir. 1956). There is no reason to grant broader scope to a review on collateral attack by habeas corpus. The charge cannot be perused for mere irregularities (even assuming irregularities could be found) when, as in this case, the charge as a whole, fairly submitted the issues to the jury and therefore did not deny the defendant due process. See United States ex rel. Petersen v. La Valle, 279 F.2d 396, 400–401 (2d Cir.), cert. denied, 364 U.S. 922, 81 S.Ct. 289, 5 L.Ed.2d 262 (1960); Kenion v. Gill, 81 U.S.App. D.C. 96, 155 F.2d 176 (1946).

Application denied.

---

read from the indictment: The second count alleges with regard to the amounts that the property had an aggregate value in excess of $100,000. The words 'in excess' mean 'over.'

"Now, the fourth count, with respect to the amount, alleges property having an aggregate value in excess of $500, which means that it is more than $500.

"I hope that answers the questions with respect to the amounts. If not, and any juror does not understand, please raise your hand.

"The Foreman: Excuse me, Your Honor. You say in excess of $100,-000' is Count No. 2?

"The Court: Yes.

"Count No. 4 says—

"The Foreman: 'In excess of five hundred.'

"The Court:—in excess of $500.

"The Foreman: Does Count No. 2 cover the case in question?

"The Court: Does Count No. 2 cover what?

"The Foreman: Cover the alleged crime.

"The Court: Well, that puzzles me a little. I would suggest with respect to that question that, when you return to the jury room, you discuss it with your fellow jurors, and then I would prefer that you send me another written ques-

tion. Now, that is the preferable practice.

"The Foreman: Thank you, Your Honor.

"The Court, Yes.

"However, I would add—Well, I'll add nothing, in view of what I said. I think it is better that you go back and discuss the question that you have in your mind; and if you still have the question, I prefer that you write it out and let us have it.

"Now, with respect to the second part of your question, which says, 'The telephone book of Lanxter Jackson is requested,' that book was marked for identification, and it was used in examination and, I think, cross examination. Now, that testimony is here and it can be read; but the book itself was not marked in evidence, so it can't be shown to you.

"So, therefore, I suggest that, since you are going back, would you please address yourselves, first, to the question that you put to me, and then the question of whether you want the testimony about the telephone book read. Would you do that, please.

"You may retire."

7. The jury was polled at defense counsel's request. Each juror reaffirmed the verdict.