**UNITED STATES of America ex rel. Willie FERNANDERS, Petitioner,**

**v.**

**Edward M. FAY, Warden of Green Haven Prison, Stormville, New York, Respondent.**

United States District Court
S. D. New York.
April 27, 1965.

Anthony F. Marra, The Legal Aid Society, New York City, for petitioner; Christopher D. Stone, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., of State of New York, New York, City, for respondent; Michael H. Rauch, Deputy Asst. Atty. Gen., of counsel.

WEINFELD, District Judge.

Petitioner, now serving a ten to fifteen year sentence at Green Haven Prison, Stormville, New York, under a judgment of conviction for robbery and related crimes entered in June 1962 upon a jury verdict in the Kings County Court, seeks his release by way of Federal habeas corpus. He charges that the conviction is void for violation of his federally protected right to a fundamentally fair trial under the due process clause of the Fourteenth Amendment. The essence of petitioner's claim centers about a question and answer statement, allegedly containing inculpatory admissions, which was never offered or received in evidence but which he contends nonetheless was unfairly used by the State to secure his conviction because it had been "solidly implanted in the jury's mind"[1] when the prosecutor in his opening statement to the jury referred to it as part of the proof he would offer in support of the charge.

The Court has read every word of the trial transcript and fully considered the contentions advanced by petitioner. It is satisfied that against the factual background of the entire case the single incident relied upon did not violate the petitioner's right to a fair trial. Indeed, the record demonstrates that he received an eminently fair trial, that his interests were adequately protected by his attorney and scrupulously guarded by the Trial Court.

Petitioner and three others, Lester Lee, Charles Darby and Raymond Respas, were charged with the holdup of a grocery store in Brooklyn. The three codefendants pleaded guilty before petitioner's trial and one of them, Lee, testified as a prosecution witness. That Lee and the other two codefendants entered the store and actually committed the holdup was not in dispute. What was in issue was whether petitioner, who drove the trio to the holdup scene and remained outside, had been a knowing participant in the crime or, rather, an innocent bystander, an unwitting tool of the others before, during and after the holdup. The jury answered by its verdict of guilty. Upon appeal the judgment of conviction was affirmed without opinion by the Appellate Division, Second Department,[2] and leave to appeal to the Court of Appeals was denied. The constitutional issue here presented was urged upon the State appellate courts and hence the matter is properly before this Court.

The sequence of events pertaining to the present application is in order. In his opening to the jury the prosecutor, after outlining the State's contention that the petitioner acted in concert with the other three in that he drove the getaway car and supplied the gun used in the robbery, added that when questioned by an Assistant District Attorney, peti-

1. Jackson v. Denno, 378 U.S. 368, 388, 84 S.Ct. 1774, 1786, 12 L.Ed.2d 908 (1964).

2. People v. Fernandez [sic], 20 A.D.2d 682, 247 N.Y.S.2d 383 (2d Dep't 1964).

tioner made inculpatory admissions. The prosecutor then mentioned the witnesses he planned to call—the holdup victim, the arresting officer, Lester Lee, and finally the official stenographer who recorded the questions and answers of the petitioner. Since it is this reference which is the hard core of petitioner's contention, it is set forth below.[3]

Lee was the key prosecution witness and directly inculpated the petitioner. The victim testified as to the facts of the holdup; the arresting officer as to his observations of petitioner and Lee prior to and at the time of their arrest, which corroborated portions of Lee's testimony. On direct examination Lee, in summary, testified that Fernanders, the petitioner, drove him, Darby and Respas to the vicinity of the holdup; that when the car was brought to a stop Fernanders told them that if there was one man in the store to "take it"; that from underneath the seat of the car Fernanders supplied the gun which Lee used in the holdup; that as the three left the car Fernanders pulled up its hood to give the appearance that something was wrong with the motor, although in fact it had functioned properly; that after the robbery the three holdup men fled from the store, Lee running in one direction, pursued by the victim, and the other two in a different direction; that as they passed his car the defendant waved them by; that shortly thereafter and some blocks from where the car had been parked, Fernanders drove it close to the curb where Lee was running with a gun in his hand; that the door of the car was "slammed open for me [Lee] to jump in," which he did; that with both petitioner and Lee in it the car continued on its way and at one point Fernanders jumped a red light; that they were soon stopped by the police, the gun found in the car and both arrested. Lee further testified that when he got into the car Fernanders, who observed they were being followed, told Lee, "Don't worry about nothing," and if they were stopped to say the reason they had jumped the red light was because they had been drinking.

No question was asked by the prosecutor on direct examination of Lee as to what transpired at the station house following his and the petitioner's arrest. It was defense counsel who, on Lee's cross-examination, initiated the inquiry to establish that coercive tactics had been employed by the detectives. The prosecutor objected to this line of inquiry, pointing out that no evidence of any confession or inculpatory statement had been offered up to that point. Defense counsel, however, insisted that his questioning was material "because there is no question but that the confession will come out. It has already been mentioned before the jury," whereupon the Trial Judge stated, "I will permit counsel to proceed. It is a matter of tactics, I don't think anything will be lost by having counsel bring it out now rather than later." The defense inquiry continued and was directed solely to threatening and coercive questioning of petitioner by detectives at the station house. Not a single word was elicited as to any inculpatory statement by petitioner. On

---

3. "The three stick-up men are not on trial here. But this defendant, who the People of the State of New York claim acted in concert with, and is a principal, in that he was driving the get-away car, that he supplied the gun, and finally when he is questioned by the District Attorney that night in connection with the case, he said yes, he knew that they had robbed this grocery store man and he was going to share in the proceeds. He told the District Attorney that that very night.

"So, the People of the State of New York are going to present to you jurors for your consideration, number one, the victim, the grocery store man; in the order in which the events happened, number two, the detective who apprehended one of the stick-up men on the spot; and, number three, we are going to bring in one of the stick-up men who had the gun, who was apprehended in this car, to testify as a State's witness.

\* \* \* \* \*

"And lastly, the District Attorney's stenographer, the official stenographer, such as you see here, who took down the questions that were asked of this defendant by the District Attorney and the answers he gave."

the contrary, Lee testified that although he and the other two had confessed, the petitioner persisted in his denial of guilt to the detectives and later to the Assistant District Attorney. On redirect examination Lee was not questioned as to any admissions by petitioner.

Upon the conclusion of Lee's testimony the Court, in the absence of the jury, advised the prosecutor that if any alleged confession were offered it would be excluded in view of Lee's testimony that petitioner had been threatened during his interrogation. The prosecutor protested that he had not as yet attempted to lay a foundation for the receipt in evidence of the claimed admissions, but the Trial Judge took the position that the prosecution, by calling Lee, had vouched for his credibility and he would not permit either the detectives or the official stenographer to testify in contradiction of Lee's testimony. In consequence, the prosecution never offered the statement, and the State's case was based entirely upon the testimony of Lee, the arresting officer and the holdup victim.

The petitioner testified in his own behalf. Needless to say, his version of material events, preceding, during and subsequent to the holdup, sharply varied from that of Lee and the arresting officer. In substance, petitioner testified that he had no idea that Lee and his two confederates had planned a robbery until they were leaving his car and about to enter the grocery store, when it was announced they planned to rob the place, to which petitioner responded, "If you do, you are on your own." He further testified that, his car having stalled when they arrived at the scene, he was still tinkering with it when the trio suddenly ran from the store; that he inquired as to the reason and Lee responded, "We had trouble in the store," to which petitioner replied, "If you did, you ain't getting back in my car"; that Lee ran in one direction and the other two in another; that he, Fernanders, "hollered" for the police; that it took some time to get the car started because the battery had gone

dead; that finally he drove from the scene of the robbery to return to his place of work; that several blocks away, when his car was at a "standstill" because of a red light and two cars ahead, Lee re-entered the car against his efforts to exclude him.

When petitioner was about to testify as to events at the station house, the Trial Judge asked counsel, "Do you wish to pursue all these details * * * ?" Counsel responded in the negative, whereupon the Court, in the jury's presence, ruled:

"It is patent that there is no evidence of any confession here; none. I am stating that as a matter of law. At the present moment there is no evidence of any confession on the part of this defendant, and any opening by the District Attorney is merely an opening.

"So there being no evidence of any confession before this Court and jury, what happened in the station house will be received by the Court if you feel it is material.

"The alleged threats and so forth are only material in one instance on the question of the voluntariness of any statement. There is no evidence of any statement that is incriminating.

"Don't you agree, counsel?

"[DEFENSE COUNSEL]: I heartily agree.

"THE COURT: So that is out of the case, the opening of the District Attorney to which I referred. There is nothing before this Court or jury that this defendant made any admissions or confessions; that is, culpatory admissions, nothing.

"So, what happened in the station house has no bearing on what he said. I will say that to the jury when I charge them, if it goes to the jury.

"[DEFENSE COUNSEL]: I think that is correct."

The Trial Judge, however, did not advert to the matter again in his charge. He marshalled the evidence on both sides

and made no reference to any alleged inculpatory statement or admission by the defendant. The jury was instructed that its determination was to be based solely "on the evidence"; that its recollection controlled "over that of counsel, the District Attorney, and even over that of the Court"; that Lee, by his own admission was "a crook, a scoundrel, a holdup man, a hoodlum," whose testimony was to be assessed accordingly. And if it did not accept Lee's word that petitioner was part of the holdup, to acquit him; further, that even if they believed Lee, unless they also believed the detective, who gave the corrobative testimony, "beyond a reasonable doubt," to acquit the defendant. No exception was taken to the charge.

■ Whether or not a defendant has been accorded a fundamentally fair trial cannot be resolved by isolating a single incident, but must be determined against the totality of all the circumstances of the trial.[4] To set the matter in proper focus, it is desirable to emphasize what this case is not. First, it is not at all like those cited by petitioner in which coerced confessions or inculpatory statements were admitted in evidence over defense objection, spread extensively upon the record and thus "solidly implanted in the jury's mind."[5] No such statement was ever offered or received in evidence. Not a single testimonial word of confession or admission came to the jury's attention. Indeed, as counsel for petitioner argues, it is not even known if there was a confession. The only testimony heard by the jury was that petitioner, under intensive police questioning, had stoutly maintained his innocence.

Secondly, this is not a case in which the prosecutor sought by strategem,[6] or abuse of his position and authority,[7] or persistent and deliberate course of conduct[8] improperly to bring before the jury irrelevant considerations or inadmissible evidence. Here there was no more than a proper outline of what the prosecution intended to offer in support of its charge, but which was aborted when the defense, over prosecution objection and before it could lay a proper foundation for receipt of the evidence, went into the subject which led to the Court's unexpected ruling. Accordingly, petitioner's right to relief may not be decided by application of an automatic rule derived from cases like Jackson v. Denno, where the jury "not only heard the confession," but it was "solidly implanted" in its mind.[9]

■ It may be taken as axiomatic that "Unless we proceed on the basis that the jury will follow the Court's instructions where those instructions are clear and the circumstances are such that the jury can reasonably be expected to follow them, the jury system makes little

---

4. See Berger v. United States, 295 U.S. 78, 89, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); People v. Carborano, 301 N.Y. 39, 43, 92 N.E.2d 871 (1950).

5. E.g., Boles v. Stevenson, 379 U.S. 43, 44–45, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964); Jackson v. Denno, 378 U.S. 368, 386–88, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Haynes v. Washington, 373 U.S. 503, 506–507, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Lynumn v. Illinois, 372 U.S. 528, 536, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963) (nonjury trial in which Court declined to strike testimony of admissions); Culombe v. Connecticut, 367 U.S. 568, 570, 81 S.Ct. 1860, 4 L.Ed.2d 1522 (1961); Rogers v. Richmond, 365 U.S. 534, 537, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961); Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936).

6. E.g., People v. Jackson, 7 N.Y.2d 142, 196 N.Y.S.2d 79, 164 N.E.2d 381 (1959) (prosecutor told jury in summation that he would explain after the trial why the victim had "declined" to identify defendant in the line-up).

7. See, e.g., Berger v. United States, 295 U.S. 78, 88–89, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); United States v. Spangelet, 258 F.2d 338, 342–343 (2d Cir. 1958); cf. People v. Robinson, 273 N.Y. 438, 8 N.E.2d 25 (1937) (improper testimony by attorney witness).

8. See, e.g., Berger v. United States, 295 U.S. at 89, 55 S.Ct. 629; Dunn v. United States, 307 F.2d 883 (5th Cir. 1962); People v. Carborano, 301 N.Y. 39, 92 N.E.2d 871 (1950).

9. 378 U.S. at 388, 84 S.Ct. 1774.

**56**

sense." [10] The ultimate question here is whether, against the background of the entire trial, it is unrealistic to believe that the jury, in the light of the Trial Judge's emphatic admonition that there was no confession, followed his instructions to decide petitioner's guilt solely on the sworn testimony of the witnesses. The record permits no conclusion other than that the jury adhered to its oath and decided the issues upon the evidence. To hold otherwise would transmute an opening statement into sworn testimony; it would require a finding that the jury disregarded the Court's specific instructions and a further finding that it considered evidence which was never presented. The record does not warrant such assumptions. This case is no exception to the rule, derived from common experience, that "jurors generally can and do follow instructions conscientiously." [11]

■ Here, the single issue for the jury, whether petitioner knowingly participated in the robbery, was simple, sharply defined and turned principally on direct evidence. [12] The Trial Judge's instructions were clear. And that the incident relied upon by petitioner has been blown up out of proportion to its true significance appears from events at the trial. The fact is that defense counsel at no point either objected to the

prosecutor's opening or moved for a mistrial. [13] Indeed, he insisted over the prosecutor's objection on delving into the circumstances of petitioner's interrogation at the station house, refraining from further inquiry only after the Trial Judge ruled out of the case any evidence of confessions or other inculpatory statements. Although counsel's failure to object or to move for a mistrial does not necessarily foreclose an attack based upon constitutional infirmity, [14] it may properly be considered when subsequent to the trial its fundamental fairness is challenged. Defense counsel, whose competence is apparent upon the record, attested to the scrupulous conduct of the trial. He remarked at its conclusion that not only had his client "received a fair trial, but that the Court had * * * gone out of his way to express fairness to the defendant." Certainly, he who was in the fray, had the feel of the case and was a zealous advocate was in a position to assay realistically whether his client's rights had been infringed. My reading of the transcript confirms his judgment.

■ This is not to say that an unscrupulous prosecutor may with impunity use his opening remarks, his summation or other opportunities to leak to a jury prejudicial matter not properly admissible in evidence. The Court holds

10. Delli Paoli v. United States, 352 U.S. 232, 242, 77 S.Ct. 294, 300, 1 L.Ed.2d 278 (1957). See also, Opper v. United States, 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101 (1954).

11. United States v. Delli Paoli, 229 F.2d 319, 322 (2d Cir. 1956) (Medina, J., concurring), aff'd, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957). Some admittedly have taken a less sanguine view. See, e.g., Krulewitch v. United States, 336 U.S. 440, 453, 69 S.Ct. 716, 93 L.Ed. 790 (1949) (Jackson, J., concurring); Skidmore v. Baltimore & O. R. R., 167 F.2d 54 (2d Cir. 1948) (Frank, J.); Nash v. United States, 54 F.2d 1006 (2d Cir. 1932) (L. Hand, J.).

12. Compare Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957).

13. Such a motion could have been made immediately following the Trial Judge's decision to exclude evidence of any confession, without risk of dramatizing the issue for the jury, which had already recessed for lunch. Cf. United States ex rel. Stovall v. Denno, No. 29208, 2d Cir., March 31, 1965.

14. Fay v. Noia, 372 U.S. 391, 426–27, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); United States ex rel. Stovall v. Denno, No. 29208, 2d Cir., March 31, 1965. See Henry v. Mississippi, 379 U.S. 443, 452, 85 S.Ct. 564, 13 L.Ed. 408 (1965). But cf. United States v. Wright, 309 F. 2d 735, 738–739 (7th Cir. 1962), cert. denied, 372 U.S. 929, 83 S.Ct. 873, 9 L. Ed.2d 733 (1963).

only that upon the facts and circumstances of the instant case, the prosecutor's statement did not deprive defendant of a fundamentally fair trial.

The writ is denied.