Frank J. McKINNEY, Petitioner,

v.

Otto C. BOLES, Warden of the West Virginia State Penitentiary, Respondent.

Civ. A. No. 1564–W.

United States District Court
N. D. West Virginia.

June 1, 1966.

Arthur M. Recht, Wheeling, W. Va., for petitioner.

C. Donald Robertson, Atty. Gen., of West Virginia, Leo Catsonis, Asst. Atty. Gen., Charleston, W. Va., for respondent.

## MEMORANDUM

MAXWELL, Chief Judge.

This is a habeas corpus petition instituted by Frank J. McKinney, an inmate of the West Virginia State Penitentiary. McKinney is currently serving a life sentence for first degree murder.

On September 12, 1958, a Wyoming County, West Virginia, jury found McKinney guilty of shooting and killing Forrest Haynes Sams, a local constable, who was carrying a warrant for McKinney's arrest. Two months later, the Circuit Court of Wyoming County, after first having overruled McKinney's motion to set aside the verdict and to grant a new trial, passed sentence.

Subsequently, two applications for writs of error to the Circuit Court of Wyoming County in the matter of State of West Virginia v. Frank J. McKinney, Felony No. 1141, were filed in the West Virginia Supreme Court of Appeals. The first application was refused June 9, 1959, by a majority of the court, and the second application was refused September 21, 1959, also by a majority of the court.

On August 4, 1965, McKinney filed his present petition for federal habeas corpus relief. A writ of habeas corpus was thereafter issued, returnable for plenary hearing at Wheeling, West Virginia, on November 8, 1965. The parties appeared before this Court on that date, the Petitioner being represented by his self-employed counsel, and it was then stipulated that the case be decided by this Court on the basis of the record herein, neither party desiring to present testimony.

On December 3, 1965, the Petitioner submitted a brief of authorities, and on March 31, 1966, the Respondent filed his memorandum of law. The Petitioner filed a reply memorandum on April 7, 1966.

This Court has considered not only the legal authorities cited in each memorandum, but also all the court orders, pleadings, affidavits, and other relevant documents that make up the record of this case. This Court is of the opinion that McKinney's petition should be denied.

As developed by the pleadings and supporting data, McKinney has either specified, or suggested, seven grounds for federal habeas corpus relief: (1) improper jury communications during his state court trial resulted in a prejudicial presumption which has not been overcome by the State of West Virginia; (2) he was prejudiced in his state court trial because of the failure of the trial judge to strike from the jury panel an allegedly prejudiced and biased juror, thereby forcing him to exercise one of his per-

emptory challenges; (3) he was denied due process of law in his failure to receive a fair trial, due to the adverse pretrial publicity in local news media; (4) the jury was improperly instructed as to the possible verdicts which could be applied to the evidence; (5) he was denied equal protection of the laws because his applications for writs of error to the West Virginia Supreme Court of Appeals were denied in an arbitrary and discriminatory fashion; (6) he was denied due process of law and equal protection of the laws, contrary to the Fourteenth Amendment, because he was sentenced by a judge who previously had been elected to the appellate court to which the subsequent appeals were taken (The foregoing is as alleged. However, the facts are that Judge Calhoun, to whom the Petitioner has reference, was nominated for the West Virginia Supreme Court of Appeals in August, 1958, and was elected in November, 1958. At the time of McKinney's trial, Judge Calhoun was Judge of the Twenty-second Judicial Circuit of West Virginia, sitting by designation, under West Virginia law, in the place of the regular Circuit Judge who disqualified himself in this state court trial); and (7) considering the totality of all the circumstances of the trial, he was not accorded the fundamentally fair trial, which due process demands.

In support of his first contention, regarding the alleged improper jury communications, this Court notes that assuming such communications did transpire, McKinney still would not necessarily be entitled to federal habeas corpus relief.

McKinney has submitted to this Court two affidavits, labeled Exhibits 5 and 6 in the court file. In the one, the owner and operator of the hotel in which the McKinney jury was sequestered for two nights has sworn that several jurors placed telephone calls to unidentified persons outside the hotel, either from room phones or from the hotel office phone, and that at least one of the jurors, L. C. Clark, made one or two calls from a phone booth, outside the hearing of any third parties present.

It has not been ascertained what was said during these telephone conversations. Neither is there any indication that McKinney has attempted to discover whether he was the subject of any of these conversations.

In the other affidavit, a resident of Wyoming County has sworn that during a court recess in the jury selection, and after the Court had instructed the prospective jurors not to discuss the case with anyone, the same L. C. Clark, who was a prospective juror at the time, talked with a group of men outside the Pineville, West Virginia, Courthouse, and that the name "McKinney" was uttered, from voices in the group, loud enough for the affiant to hear.

In support of the allegations associated with these affidavits, the Petitioner has cited Chapter 62, Article 3, Section 6 (Michie's 6195) of the 1955 West Virginia Code, applicable at the time of McKinney's state trial, which provided that after a jury had been impaneled in a case which could carry the death penalty, no sheriff or other officer should converse with, or permit anyone else to converse with, a juror unless by leave of the court.[1]

The Petitioner has also cited syllabus point 5 of State v. Stevenson, 147 W.Va. 211, 127 S.E.2d 638 (1962). This syllabus point is a quote from State v. Clark, 51 W.Va. 457, 472, 41 S.E. 204, 210–211 (1902), wherein it was stated that outside communications by the jurors raise a presumption in favor of the prisoner, which the state must overcome by evidence beyond a reasonable doubt.

---

[1]. Apparently, the Petitioner does not wish to concentrate on any improprieties for which the prospective juror, L. C. Clark, may have been guilty, prior to impanelment of the jury. To the extent which the Petitioner wishes to do so, however, this Court notes that for reasons stated in the main body of this ruling (specifically, regarding the first contention) he has failed to show the possibility of any Constitutional deprivation.

■ This proposition which is reflected in *Stevenson* and *Clark* may accurately state West Virginia standards for the granting of a new trial, but it is by federal due process standards, and not by such state criteria, that this Court must be guided in federal habeas corpus cases.

It is this Court's opinion that judged by federal standards McKinney's first contention must be denied. The Court specifically relies upon two reasons which have led it to this conclusion.

First, there is no case law which automatically raises an "improper communication by or with a state trial juror" to Constitutional proportions. To the contrary, there is good cause, at least in McKinney's case, for excluding such a communication from the realm of federal due process.

There is no doubt that the United States Supreme Court or a United States Circuit Court of Appeals may remand a federal case to a United States district trial court, with directions that a hearing be held to determine if improper jury communications were also prejudicial, if no such determination has been made by the trial court. Remmer v. United States, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954); Washington Gas Light Co. v. Connolly, 94 U.S.App.D.C. 156, 214 F.2d 254 (1954); Wheaton v. United States, 133 F.2d 522 (8th Cir. 1943). It is also certain that a United States Circuit Court of Appeals may remand a federal case to the United States district trial court for a new trial, when it is clear that the district court has abused its discretion by not granting a new trial in cases where it cannot be said that a jury communication was harmless.

Holmes v. United States, 284 F.2d 716 (4th Cir. 1960) (where obviously prejudicial communications by a federal court official to members of the federal jury were involved); Texas and New Orleans Railroad v. Underhill, 234 F.2d 620, 64 A.L.R.2d 152 (5th Cir. 1956); Paramount Film Distributing Corp. v. Applebaum, 217 F.2d 101 (5th Cir. 1954); cf. Ogden v. United States, 112 F. 523 (3rd Cir. 1902).[2] And, finally, there is no doubt that a United States district trial court has the power to grant a motion for a new trial where it is apparent that the communications were not harmless. United States v. Rakes et al., 74 F. Supp. 645 (E.D.Va.1947).[3]

It is apparent, however, that the above stated principles of law, insofar as the federal appellate courts are concerned, are in the nature of appellate review of federal trial practice, which the United States Supreme Court and the Circuit Courts of Appeals exercise, and it is noteworthy to observe that in none of the above cases has the appellate court action been specifically premised on Constitutional standards of due process. In fact, Constitutional standards were not mentioned in any of the above cases. It is also apparent that in various ways the above cases are factually distinguishable from the present case.

Since federal due process grounds have not yet been asserted regarding improper jury communications in federal trials, it would be incongruous for this Court, based on the facts here present, to find such a Constitutional deprivation in this state criminal trial.

Most assuredly, there could be factual situations where due process would be vi-

2. Although a United States Circuit Court of Appeals may remand, with directions for a hearing or a new trial, there is a large number of cases in which the lower court has been found not to have abused its discretion. E. g., Little v. United States, 331 F.2d 287 (8th Cir. 1964); Mee v. United States, 316 F.2d 467 (8th Cir. 1963); Turner v. United States, 222 F.2d 926 (4th Cir. 1955); United States v. Flynn, 216 F.2d 354 (2d Cir. 1954); Johnson v. United States, 207 F.2d 314

(5th Cir. 1953); Ryan v. United States. 89 U.S.App.D.C. 328, 191 F.2d 779 (1951); United States v. Sorcey, 151 F. 2d 899 (7th Cir. 1945); Bilodeau v. United States, 14 F.2d 582 (9th Cir. 1926); Massenberg v. United States, 19 F.2d 62 (4th Cir. 1927); Chambers v. United States, 237 F. 513 (8th Cir. 1916).

3. For a cursory review of the effect of a stranger's communication with a jury in federal criminal cases, see Anno. 1 L.Ed. 2d pages 1849–1861.

olated, but this case is not one of those instances. The second reason for denying McKinney's first contention, therefore, is that the facts of this case do not merit this Court's finding a Constitutional deprivation.

The record in McKinney's case is not disputed. While sequestered, several of the jurors made improper telephone calls to unidentified persons. All the calls apparently were originated by the jurors. It is not specifically contended that during these telephone conversations the jurors heard anything which prejudiced them against the Petitioner. It is argued, however, that the mere occurrence of these telephone calls, which could have been made for purely personal reasons, as well as for any other purpose, merits federal habeas corpus relief because of the presumption which is said to have been raised in McKinney's favor.

While this Court does not condone the jurors' action, it believes that more is here needed to show a Constitutional deprivation.

Unlike Sheppard v. Maxwell, 346 F.2d 707, 736 (6th Cir. 1965), a case involving a state prisoner seeking federal habeas corpus relief, this Court does not say that there could not be factual situations regarding improper state jury communications, that would rise to Constitutional proportions.[4]

■ The extent of this Court's present holding is that, based on the allega-

tions and facts present in McKinney's record, there is no basis for finding the fundamental unfairness which must constitute any deprivation of due process. Cf. United States v. Gersh, 328 F.2d 460, 463–464 (2nd Cir. 1964).[5]

Although a hearing has not been requested, the Court has considered whether, under the purview of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963), it should direct one.

The Court has concluded not to do so, for *Townsend* is distinguishable from the present case in several aspects. To begin with, Townsend's petition for federal habeas corpus, regarding an inadmissible confession, alleged a deprivation of his Constitutional rights, whereas McKinney's petition, regarding improper jury communications, does not necessarily do so. Furthermore, *Townsend's* main thrust was to assure a reliable determination of the relevant facts. In the case presently before the Court, however, it must be assumed that McKinney's two highly competent self-employed counsel had reached the opinion that all the relevant facts are developed and are "reliably determined," and had concluded that on the basis of the record, particularly on the basis of the two above-mentioned affidavits attesting to the improper jury conduct, federal habeas corpus is merited. With the latter of their conclusions, the Court does not agree.

As a result of the two above-discussed reasons, therefore, it is the determina-

4. In addition to *Sheppard*, United States ex rel. Moore v. Fay, 238 F.Supp. 1005 (S.D.N.Y.1965), appears to be the only reported case where a state prisoner has asserted improper jury communications as grounds for federal habeas corpus relief. In *Moore*, however, no appeal was taken from the state trial proceedings, and the court concluded that the petitioner could not be heard to allege in a federal habeas corpus proceeding that he had been deprived of a fair trial because of a juror's conduct. In other words, the *Moore* court did not feel it had to face the question whether Constitutional grounds had been raised.

5. Admittedly, *Gersh* can be factually distinguished from McKinney's case. In

*Gersh*, there was a series of anonymous telephone calls to the forelady of the jury (either before or during the jury deliberations). The person placing the calls would hang up as soon as the forelady lifted her receiver. In McKinney's case, the jurors themselves placed the calls, and actual conversation thereafter transpired. But the factual difference is not meaningful. The forelady in *Gersh* could have become just as prejudiced against the defendant by virtue of the anonymous telephone calls, thinking that friends of the defendant were trying to intimidate her, as could any of the jurors in McKinney's case by anything they heard.

tion of this Court that McKinney's first contention be denied.

■ McKinney's second contention is that he was prejudiced because of the failure of the state court to strike a prejudiced and biased juror from the jury panel. In support of this contention, McKinney has brought to this Court's attention the dialogue which developed between the allegedly biased venireman and trial counsel. However, the Court fails to understand how this prejudice, if any there was, could rise to Constitutional proportions, especially since counsel for McKinney thereafter exercised a peremptory challenge and struck the venireman from the jury. McKinney himself has been able to cite no cases directly on point, but, as far as this issue is concerned, has confined himself to the proposition that this Court in a post convicton review has the duty to review independently the voir dire examination.

McKinney's third contention is that he was denied a fair trial because of adverse pre-trial publicity in local news media.

■■ It should be noted here that a petitioner carries the burden of demonstrating the Constitutional vice in his conviction. Sheppard v. Maxwell, supra 346 F.2d 712–725. As the *Sheppard* court observed on pages 712–713, " 'The question whether jurors are impartial in the constitutional sense is one of mixed law and fact as to which the challenger has the burden of persuasion * * *.' " Geagan v. Gavin, 292 F.2d 244, 246 (1st Cir. 1961), cert. den. 370 U.S. 903, 82 S.Ct. 1247, 8 L.Ed.2d 399 (1962). This burden is one which must be carried " 'not as a matter of speculation but as a demonstrable reality.' " United States ex rel. Darcy v. Handy, 351 U.S. 454, 462, 76 S.Ct. 965, 100 L.Ed. 1331 (1956); Stroble v. State of Calif., 343 U.S. 181, 198, 72 S.Ct. 599, 96 L.Ed. 872 (1952); see also Adams v. United States ex rel. McCann, 317 U.S. 269, 281, 63 S.Ct. 236, 87 L.Ed. 268 (1942); Briggs v. United States, 221 F.2d 636 (6th Cir. 1955).

It also should be reemphasized at this point that Petitioner's self-employed counsel stipulated on November 8, 1965, that the issues in this case were to be decided on the basis of the record.

It is, therefore, the conclusion of this Court that Petitioner simply has not met his burden of persuasion. In support of his contention, Petitioner has submitted for this Court's consideration a newspaper article, labeled "Exhibit A" and attached to his brief of December 3, 1965, which seems to have appeared on page 16 of the Beckley, West Virginia, POST HERALD AND REGISTER (Sunday, September 7, 1958, edition) entitled "State Seeks Death Penalty In Constable Murder Trial."

■ It is apparent, however, that this evidence, in itself, falls far short of what is needed to demonstrate that adverse pre-trial publicity has prevented a fair trial. See Estes v. State of Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); Irvin v. Dowd, 366 U.S. 717, 723–728, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); Sheppard v. Maxwell, supra 346 F.2d 712–725.

The Petitioner's fourth contention raises alleged improprieties in the jury instructions, which have already been unsuccessfully raised before the West Virginia Supreme Court of Appeals in at least one of McKinney's two petitions for writ of error. Petitioner's Exhibit 7.

■ Therefore, it must be borne in mind that this Court in passing upon the present contention, is not sitting as an appellate court to review the state court proceedings. This Court reviews the state court proceedings only to determine if any of the Petitioner's federally protected Constitutional rights have been violated.

Since there is some authority suggesting that a federal court should examine the state trial jury instructions to ascertain whether or not fundamental error under the concept of due process was committed, see United States ex rel. Petersen v. La Vallee, 279 F.2d 396, 400–401 (2d Cir. 1960); United States ex

rel. Bonomolo v. Wallack, 238 F.Supp. 14, 17–18 (S.D.N.Y.1965), this Court has reviewed the record with reference to this specific contention.

In so doing, this Court has failed to find any grounds for federal habeas corpus relief. Petitioner's claim that he was denied an instruction concerning manslaughter is clearly erroneous in light of State's Instruction No. 1 and Defendant's Instructions Nos. 2, 14, 15, and to a lesser degree, in light of Defendant's Instructions Nos. 5, 8, 9, and 10. Defendant's further contention that the jury was misled as to the definition of second degree murder is not tenable in view of the "four corners" of the instructions, and especially in view of the State's Instruction No. 4.

■ Therefore, under the state of this record, the Court is compelled to agree with other federal courts, which have concluded that a state prisoner, who alleges improprieties in the jury instructions, is not entitled to federal habeas corpus relief, where the allegations are not shown to constitute a deprivation of due process. Greyson v. Com. of Ky., 333 F.2d 583 (6th Cir. 1964); Kregger v. Bannan, 170 F.Supp. 845 (E.D.Mich. 1959), aff'd 273 F.2d 813 (6th Cir. 1960); United States ex rel. Smith v. Reincke, 239 F.Supp. 887 (D.Conn.1965).

In view of the foregoing finding, it is not now necessary to determine at what point, if ever, improperly given jury instructions, or refused jury instructions, may constitute a violation of due process.

The fifth and sixth contentions raised in the petition for federal habeas corpus relief are, respectively, that McKinney was denied the equal protection of the laws because his two applications for writs of error to the West Virginia Supreme Court of Appeals were denied in an arbitrary and discriminatory fashion and that McKinney was denied his Constitutional rights under the Fourteenth Amendment because he was sentenced by Judge Calhoun, who had previously been elected to the West Virginia Supreme

Court, to which appeals were taken. (As the Court has previously noted, however, Judge Calhoun was not elected to the Supreme Court until after McKinney's state trial.)

■ ■ In answer to these contentions, this Court first notes that based on the record in this case, there simply is nothing to support McKinney's contention of any arbitrary action by the West Virginia Supreme Court of Appeals. This Court secondly notes that the mere fact that a state appellate judge, one of a five man tribunal to which an appeal is later taken, presides over a state trial, does not constitute a denial of due process so as to warrant federal habeas corpus relief. This conclusion is fortified by Petitioner's concession that "(a)pparently, Judge Calhoun did not participate in either consideration of the applications for writs of error." Petition for Habeas Corpus, page 3.

McKinney's last contention, while not specified, seems to permeate all claims of his petition, and is that as a result of the totality of all the circumstances of the trial, he was not given the fundamentally fair trial to which he was entitled.

This Court finds no merit in this contention. Two of the main cases upon which he relies readily can be distinguished from the present case. In Pike v. Dickson, 323 F.2d 856 (9th Cir. 1963), there was a dispute as to what had happened at the state trial, and after the district court had failed to make a factual determination, merely noting that the state court had already done so, the circuit court remanded so that the district court could make the necessary findings. Moorer v. State of So. Car., 347 F.2d 502 (4th Cir. 1965) was a case where a district court had failed to conduct a plenary hearing in a federal habeas corpus matter involving non-frivolous issues. The case was remanded with directions. In McKinney's federal habeas corpus proceeding, however, there is no factual question to which this Court

has failed to give a Constitutionally required hearing.

In a third case, United States ex rel. Fernanders v. Fay, 241 F.Supp. 51 (S.D. N.Y.1965), which McKinney has also cited, the habeas corpus petitioner was dismissed as lacking merit.

■ However, it is admitted that in those portions of the above cases, which have been quoted by the Petitioner, it is suggested that a court should look at the trial as a whole to determine if there have been any violations of one's Constitutional rights, and not only at particular incidents.

■ This mandate has been followed by this Court, for the duty of a court in habeas corpus proceedings extends further than a mere inquiry into the specific contentions raised. A court must review the entire proceedings to determine whether or not there has been a denial of due process in the conduct of the trial.

For this purpose, the Court reiterates that it has reviewed the entire record, but unlike the court in MacKenna v. Ellis, 280 F.2d 592 (5th Cir. 1960), finds that the total result was the granting to the accused of a fundamentally fair trial.

No federal Constitutional rights of the Petitioner have been invaded, and the petition must be denied.

In conclusion, this Court notes that the main thrust of McKinney's present habeas corpus petition raises grounds, which seem to rest within the sole purview of state appellate review. McKinney has been afforded the benefit of that state appellate review. As was said in Johnson v. Tinsley, 244 F.Supp. 118 (D. Colo.1965), at 120, moreover, "Habeas corpus cannot be used as a writ of error to review irregularities and errors in the trial court." Since McKinney has not been deprived of any of his Constitutionally protected rights, he must abide by the rulings of the state court system.